In Re: CONDEMNATION OF LAND FOR the SOUTH EAST CENTRAL BUSINESS DISTRICT REDEVELOPMENT AREA # 1: (405 MADISON STREET, CITY OF CHESTER)

Appeal of: Earnestine O. Brown.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 12, 2008.

Decided April 22, 2008.

Earnestine O. Brown, appellant, pro se.

Louis M. Kodumal and Paul J. Toner, Media, for appellee.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Earnestine O. Brown (Brown) appeals from the December 13, 2006, order of the Court of Common Pleas of Delaware County (trial court), which overruled Brown's preliminary objections to the Declaration of Taking (Declaration) filed by the Redevelopment Authority (Authority) of the City of Chester (City) under the former Eminent Domain Code (Code).[1] We affirm.

Brown owns the property located at 405 Madison Street in the City (the Property). The Property is within the South East Central Business Redevelopment Area # 1 (Redevelopment Area), which the City Planning Commission certified as blighted on April 14, 2004.

On May 12, 2004, the Authority approved an Agreement of Sale and Redevelopment Agreement (Agreement) with Vahan Gureghian for the purchase and redevelopment of the Property for charter school purposes, contingent upon approval by City Council.[2] On August 11, 2004, the Authority approved a Redevelopment Plan Proposal (Plan) providing for educational uses and related facilities in the Redevelopment Area. On February 9, 2005, City Council approved the Agreement and the Plan. On July 6, 2005, the Authority and Gureghian executed the Agreement, and, on July 14, 2005, the Authority filed its Declaration. (Trial ct. op. at 1, 3; R.R. at 18a–19a, 57a, 66a.)

■ Brown filed preliminary objections to the Declaration with the trial court, asserting that: (1) the taking was "in favor of a private developer," contrary to Alabama law, although Alabama law conflicts with federal law;[3] (2) the current state of eminent domain law is so unsettled that Brown's rights and responsibilities are "uncertain and unprotected by law";[4] and (3) the acquisition of the Property for educational buildings will not be beneficial to the public because the existing educational buildings "have been constructed with such inferior materials and workmanship that the ... life span of [the] institution ... will [not exceed] five (5) years."[5] (R.R. at 24a.) After a hearing on the matter, the trial court overruled the preliminary objections. Brown now appeals to this court.[6]

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* formerly 26 P.S. §§ 1–101–1–903, repealed by section 5(2) of the Act of May 4, 2006, P.L. 112. Although repealed, the Code governs this case because, with certain exceptions not applicable here, the new statute applies only to condemnations occurring on or after its September 1, 2006, effective date. *See In re Condemnation by County of Berks,* 914 A.2d 962 (Pa.Cmwlth.2007).

2. (Authority's Resolution of 8/11/04, ¶ 4(b), R.R. at 19a; Agreement, R.R. at 57a–66a.)

3. Brown suggests that Alabama law does not permit condemned property to be conveyed to a private developer. Even assuming this to be true, Alabama law has no relevance here.

4. To the extent Brown argues that her property rights are unprotected by law, Brown appears to concede that the taking in this case was proper.

5. Brown also raised issues relating to the amount of just compensation and liability for property taxes. (R.R. at 24a–25a.) However, such issues are not properly raised in preliminary objections. *See* section 406(a) of the Code, 26 P.S. § 1–406(a) (stating that preliminary objections are limited to challenges relating to: (1) the power or right to condemn the property; (2) the sufficiency of the security; (3) the procedures followed by the condemnor; and (4) the declaration of taking).

6. Our scope of review is limited to determining whether the trial court abused its discre-

## I. Evidentiary Rulings on Contracts

■ Brown first argues that the trial court abused its discretion by refusing to allow Brown to examine witnesses and to present relevant evidence regarding the Agreement and regarding a contract between Brown and Gureghian. The Authority contends that Brown has waived this issue because, in her brief, Brown does not identify any specific evidentiary rulings of the trial court or provide any citation to the record. We agree with the Authority.

■ Each part of the argument in a brief must contain the particular point being treated, followed by such discussion and citation of authorities as are deemed pertinent. Pa. R.A.P. 2119(a). Arguments not properly developed in a brief will be deemed waived. *Rapid Pallet v. Unemployment Compensation Board of Review*, 707 A.2d 636 (Pa.Cmwlth.1998). Moreover, the statement of the case and/or argument portion of a brief must contain a "specific reference to the places in the record" where the ruling, or exception thereto, appears in order to show that the question before the court was timely and properly raised below so as to preserve the question on appeal. Pa. R.A.P. 2117(c); Pa. R.A.P. 2119(e).

Here, Brown merely lists her witnesses and states that the trial court ruled irrelevant their testimony about the Agreement and a contract between Brown and Gureghian. Brown does **not** discuss the details or circumstances of her contract with Gu-reghian; she does **not** indicate what each witness's testimony would have been regarding the Agreement and the other contract; and she does **not** present an argument as to why testimony about the Agreement and the other contract would have been relevant to the issues she raised in her preliminary objections. Moreover, to show the place of each trial court ruling, or exception thereto, Brown simply cites to "pages 6–124" of the hearing transcript. (Brown's brief at 12.) Such a citation does **not** constitute a "specific reference" to the places in the record where the rulings or exceptions appear.[7]

Absent proffered testimony to review or properly developed arguments to consider, we are unable to perform appellate review of the trial court's rulings. Thus, Brown's first argument is deemed waived.

## II. Evidentiary Rulings on Delegation

■ Brown next argues that the trial court abused its discretion in refusing to allow Brown to present relevant evidence to prove that the Authority improperly delegated its eminent domain powers to Gureghian through the Agreement. However, in her brief, Brown does not indicate what relevant evidence she would have presented as proof of improper delegation, and she does not identify any specific ruling by the trial court in this regard. Absent some knowledge of the excluded evidence and an argument to consider, we are unable to perform appellate review of the trial court's rulings. Thus, Brown's second argument is deemed waived.[8]

---

tion or committed an error of law. *In re Redevelopment Authority of the City of Philadelphia* (1839 N. Eighth St.), 595 Pa. 241, 938 A.2d 341 (2007).

**7.** We note that Brown does quote the trial court's statement at page 44 of the notes of testimony: "I haven't heard a single relevant fact from this ... witness, yet, in an hour." (R.R. at 167a.) However, Brown does not explain why the trial court's statement was incorrect.

**8.** Instead of arguing how the trial court abused its discretion by excluding evidence showing improper delegation, Brown argues that the Authority improperly delegated its eminent domain powers through its Agreement with Gureghian. The latter would have been a proper issue for Brown to raise in her

### III. Evidentiary Rulings on Private Benefit

■ Finally, Brown argues that the trial court abused its discretion in refusing to allow Brown to present relevant evidence showing that the Authority took the Property for the private benefit of Gureghian. However, in her brief, Brown does not indicate what relevant evidence she would have presented, and she does not identify any specific ruling by the trial court in this regard. Absent some knowledge of the excluded evidence and an argument to consider, we are unable to perform appellate review of the trial court's rulings. Thus, Brown's final argument is deemed waived.[9]

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of April, 2008, the order of the Court of Common Pleas of Delaware County, dated December 13, 2006, is hereby affirmed.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully must disagree with the decision of the majority to affirm the order of the Delaware County Court of Common Pleas, which overruled the preliminary objections filed by Earnestine O. Brown (Brown) to the declaration of taking filed by the Redevelopment Authority (Authority) of the City of Chester (City) in regard to Brown's improved property at 405 Madison Street in the City. As the majority notes, on May 12, 2004 the Authority approved an agreement of sale and a redevelopment agreement with Vahan Gureghian (Gureghian) for Gureghian to purchase the property for charter school purposes. David Sciocchetti, Executive Director of the Authority, admitted in his testimony that the Authority entered into an agreement with Gureghian rather than the Charter School because "[t]he charter school didn't approach us to enter into an agreement. Mr. Gureghian did." N.T. 172–173; Reproduced Record (R.R.) 295a–296a. Gureghian testified that he is "nothing more than a landlord to the charter school." N.T. 83; R.R. 206a. He further testified that he rents the parcels for the School, with up to thirty parcels included under one agreement with the Authority and some others not subject to its control. N.T. 90–91; R.R. 213a–214a. He stated that he did not know the gross amount that he receives for renting the parcels. N.T. 91; R.R. 214a.

### I

The City's Planning Commission completed a study known as the "Redevelopment Area Plan for South East Central Business District Area # 1" in March 2004, which determined that the area to which it applied was blighted; Brown's property is in that area. After coming to the May

---

preliminary objections. *See* 26 P.S. § 1–406(a) (allowing preliminary objections challenging the procedures followed by the condemnor). However, Brown did not raise such an issue, and the failure to raise an issue permitted by preliminary objections constitutes a waiver of that issue. *Id.*

We also note that, in making her argument, Brown challenges the determination of blight. However, this issue is not set forth in, or suggested by, the statement of questions involved; thus, the matter is waived. *See* Pa. R.A.P. 2116(a) (stating that, ordinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby).

9. We note that Brown did not raise this issue in her preliminary objections. For that reason, too, the issue is waived. 26 P.S. § 1–406(a).

2004 agreements with Gureghian, the Authority adopted a "Redevelopment Plan Proposal for South East Central Business District Redevelopment Area # 1" on June 30, 2004. On August 11, 2004, the Planning Commission amended the redevelopment plan and the Authority amended the redevelopment plan proposal to include use for educational buildings and accessory uses (specifically mentioning charter schools) as a public use provided that the developer secure necessary zoning approvals.

The Authority drafted an Agreement of Sale and a Redevelopment Agreement (Agreement) under which Gureghian assumed responsibility for all costs associated with acquisition of the properties, contingent upon approval of the redevelopment plan proposal by City Council as required by Section 10 of the Urban Redevelopment Law, Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. § 1710. City Council approved the redevelopment proposal and the Agreement by resolution on February 9, 2005. On July 6, 2005 the parties executed the Agreement, and the Authority filed its declaration of taking on July 14, 2005.

Brown, proceeding in her own behalf, filed preliminary objections. The first, although making a reference to law of the State of Alabama, questioned whether the condemnation and exercise of eminent domain in favor of a private developer created a conflict between state and federal law, citing *Kelo v. City of New London,* 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). The second questioned whether the current state of the law was so unsettled that the rights and responsibilities of the private property owner were uncertain and unprotected by law. The third stated that acquisition of Brown's property for the purpose of transfer to Gureghian for inclusion with educational buildings would

not in fact be beneficial and in the public interest because the already erected educational buildings allegedly had been constructed with inferior materials and workmanship and would not provide benefits for more than five years. Further objections also addressed the topic of just compensation, although that is not a proper subject at the stage of preliminary objections under Section 406 of the former Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. § 1–406, repealed by Section 5 of the Act of May 4, 2006, P.L. 112.

The trial court conducted a hearing on Brown's preliminary objections on December 12, 2006, at which Brown presented the testimony of George Cordes, private counsel for Gureghian and also an asset manager for the County of Delaware; Mayor Wendell Butler; Gureghian; William C. Payne, City Planner; and Randolph Dixon, Authority Chairman. The Authority presented the testimony of Executive Director Sciocchetti. Stating that the issue was whether a charter school is a public use, the trial court sustained numerous objections to Brown's questions and ultimately overruled Brown's preliminary objections. The trial court's opinion in support of its order stated that a condemnee bears a heavy burden of proving that a blight determination was made with fraud or in bad faith, citing *Mercurio v. Allegheny County Redevelopment Authority,* 839 A.2d 1196 (Pa.Cmwlth.2003). It also stated that Brown made no allegation that the Authority or anyone else acted fraudulently or in bad faith, nor did she challenge the propriety of the blight determination. Even if she had done so, the trial court concluded that the record was devoid of evidence in support and noted that the entity responsible for the determination, the Planning Commission, was not a party before the court.

Concerning Brown's complaint that she was barred from introducing evidence permitted by *Kelo*, the trial court stated that the *Kelo* decision did not represent a departure from or significant expansion of eminent domain law in Pennsylvania. In *Kelo* the Unites States Supreme Court stated that promoting economic development is a traditional function of government, not distinguishable from other public purposes. In *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), relied upon in *Kelo*, the Supreme Court held that condemnation of a store that was not blighted was proper as part of a plan determined to be necessary for an entire neighborhood. In Pennsylvania condemnation of property is proper only if it is for a public use. *Faranda Appeal*, 420 Pa. 295, 216 A.2d 769 (1966). The trial court determined that charter schools are public under Sections 1702–A and 1703–A of the Charter School Law, Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1702–A and 17–1703–A.

As for Brown's claim that the condemnation and Gureghian's role as developer in the subsequent sale was not in the public interest, the trial court referred to *Appeal of Heim*, 151 Pa.Cmwlth. 438, 617 A.2d 74 (1992), where this Court noted that a taking does not lose its public character merely because there may exist some feature of private gain—if the public good is enhanced it is immaterial that a private interest may also be benefited. The agreement for Gureghian to pay condemnation expenses did not make it improper per se, and the suggestion of inferior materials and workmanship would be overcome by

applicable statutory and regulatory building requirements. Because Brown's preliminary objections did not challenge the blight determination, any such challenge was waived.[1]

## II

The majority concludes that Brown has waived all of the arguments that she advances here. First Brown argues that the trial court erred and abused its discretion in refusing to allow her to examine witnesses and to present relevant evidence at the hearing in violation of her due process rights. After reviewing the record, I disagree that Brown has waived objections on these points when it is clear from her brief that she challenges specific evidentiary rulings by the trial court and that her references to transcript pages 6–124 do not create a waiver of arguments as the majority contends. Brown sought to question Attorney Cordes (a county employee and counsel for Gureghian), the Mayor, Gureghian, the City Planner and the Authority Chairman regarding their roles in the condemnation process against Brown, and she sought to question witnesses about the content and intent of the contracts between Gureghian and the Authority.

The trial court ruled that the witnesses' testimony was irrelevant as to the issues raised in Brown's preliminary objections and as to contract negotiations between Gureghian and the Authority and the terms of the contract. Finding that this testimony would be irrelevant constituted an abuse of the trial court's discretion. Moreover, the trial court erred to the extent that its decision to overrule Brown's

1. The Court's review in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law; in a case under the Urban Redevelopment Law the Court must see that the authority has not acted in bad faith or arbitrarily, that it has followed statutory procedures in preparing a plan and that there are not constitutional violations. *In re Condemnation by Urban Redevelopment*, 823 A.2d 1086 (Pa.Cmwlth.2003), *aff'd*, 590 Pa. 431, 913 A.2d 178 (2006).

preliminary objections was in any manner premised on consideration of her failure to challenge the blight determination. It is well settled that a condemnee does not waive his or her rights to challenge a taking by failing to challenge a prior blight determination. *See Matter of Urban Redevelopment Authority*, 527 Pa. 550, 594 A.2d 1375 (1991).

Second, Brown argues that the trial court erred in ruling irrelevant evidence that would prove the Authority's unlawful delegation of eminent domain powers to Gureghian under provisions of the Agreement. Neither the Eminent Domain Code nor the Urban Redevelopment Law authorized the Authority to give a private party control over the Authority's functions; therefore, it exceeded its powers. The power to take private property through eminent domain is an attribute of the sovereign. *Peters v. City of Reading*, 321 Pa. 220, 184 A. 23 (1936). The Supreme Court observed the following in *Winger v. Aires*, 371 Pa. 242, 247, 89 A.2d 521, 523 (1952) (quoting *Lance's Appeal*, 55 Pa. 16, 25 (1867)):

> The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public, either mediately or immediately. The power arises out of the natural principle which teaches that private convenience must yield to the public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it.

The United States Supreme Court has held that states may not by virtue of the contract clause divest themselves by contract of their right to exert governmental authority. *Contributors to Pennsylvania Hospital v. City of Philadelphia*, 245 U.S. 20, 38 S.Ct. 35, 62 L.Ed. 124 (1917). Brown notes that under the Agreement Gureghian agreed to provide security for the condemnation, but Section 403 of the former Eminent Domain Code, 26 P.S. § 1–403, requires that security be given by the condemnor.

Third, Brown argues that the trial court erred in disallowing evidence to set aside the declaration of taking in accordance with the elements of *Kelo*. In *Kelo* it was emphasized that property may not be taken under the pretext of a public purpose when the actual purpose is to bestow private benefits and that a taking is less likely to be pretexutal when the ultimate owner of the property is not known at the time of taking. Here, the ultimate owner was known at the time of the filing of the declaration on July 14, 2005 pursuant to the resolution and the Agreement executed on July 6, 2005. The taking lacked the comprehensive economic development purpose that was upheld in *Kelo*. Rather, the purpose was to take Brown's property to add an addition to a charter school constructed in 1998.

Brown maintains that she was barred from presenting evidence of favoritism to a private party, making reference to Justice Kennedy's concurring statement in *Kelo* that transfers intended to confer benefits on particular favored private entities, with only incidental or pretextual public benefit, are forbidden by the Public Use Clause of the Fifth Amendment. She disputes the Authority's reliance on *Berman* where the taking was pursuant to a comprehensive plan prepared by an administrative agency for redevelopment of a large area of the District of Columbia to eliminate slum and substandard housing conditions.

The majority concludes that Brown does not challenge the trial court's improper

exclusion of evidence but rather argues directly that the Authority improperly delegated its eminent domain powers, which would have been a proper subject of a preliminary objection under former Section 406, but Brown did not raise it and, therefore, it is waived. Similarly, the majority concludes that Brown argues abuse of discretion in refusal to allow her to present relevant evidence that the Authority took the property for the private benefit of Gureghian, but she does not indicate what relevant evidence she would have presented or identify specific rulings, and this issue was not raised in her preliminary objections.

In my view, although Brown's preliminary objections and some of her arguments on appeal might be inartfully framed, there is no question that Brown has preserved her underlying contention that she attempted to advance in her preliminary objections, in her presentation of evidence and cross-examination at trial and in her appellate arguments that the taking of her property was not conducted for a public purpose but rather for a private purpose. Further, this record supports that contention. The authority to exercise eminent domain power must be strictly construed, and a certification of blight does not itself authorize condemnation of property. *Winger* and *Redevelopment Authority of Scranton v. Kameroski,* 151 Pa.Cmwlth. 345, 616 A.2d 1102 (1992).

In *In re Forrester,* 575 Pa. 365, 836 A.2d 102 (2003), the Supreme Court observed that a taking will have a public purpose only when the public is to be the primary and paramount beneficiary of the exercise of eminent domain power and that to consider a taking as effectuating a public purpose the citizenry at large rather than a private entity or individual will be the principal recipient of any benefit. Thus the trial court's repeated assertions that

Brown must show that the taking was "solely" for a private benefit were incorrect. In *Redevelopment Authority of Erie v. Owners or Parties in Interest,* 1 Pa. Cmwlth. 378, 274 A.2d 244 (1971), the Court repeated cogent observations of the Pennsylvania Supreme Court that there is not a suggestion anywhere in the Constitution that private property may be taken for a private use.

Although the trial court here restricted Brown to questions relating to whether a charter school is a public use, the record nevertheless indicates that this taking was for a private benefit. As noted above, Gureghian testified that he is "nothing more than a landlord to the charter school." N.T. 83; R.R. 206a. Although the operation of a charter school is a public purpose, the business of being a private landlord renting land for such a school is not. Moreover, the school is required to be a nonprofit corporation, but Gureghian's enterprise is not. The only explanation of why the Authority did not enter into an agreement with the School, if the intention of the Authority was to provide a benefit to the School, is the testimony of Executive Director Sciocchetti that the School did not approach the Authority—Gureghian did.

In Justice Kennedy's concurring opinion in *Kelo,* 545 U.S. at 490, 125 S.Ct. at 2669, 162 L.Ed.2d at 458, he pointedly stated: "[T]ransfers intended to confer benefits on particular, favored private entities, and with only incidental or pretextual public benefits, are forbidden by the Public Use Clause [of the Fifth Amendment]." Further: "A court confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one and review the record to see if it has merit, though with the presumption that the government's actions were reasonable and intended to serve a

public purpose." *Id.* at 491, 125 S.Ct. at 2669, 162 L.Ed.2d at 459.[2] The Pennsylvania Supreme Court recently reiterated in regard to "public purpose":

> According to our Court, "a taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise." *In re Bruce Ave.*, 438 Pa. 498, [505,] 266 A.2d 96, 99 (1970). In considering whether a primary public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking. *Belovsky v. Redevelopment Authority*, 357 Pa. 329, [340,] 54 A.2d 277, 283 (1947). Stated otherwise, the **true** purpose must primarily benefit the public.

*Middletown Township v. Lands of Stone*, 595 Pa. 607, 617, 939 A.2d 331, 337 (2007).

The entire history of the transaction here shows favoritism and taking of one person's private property for pretextual public benefit. The initial approach was by Gureghian, not by the School. After initial agreements with Gureghian, the Planning Commission and the Authority modified the original plan and proposal to include charter school uses. Gureghian as landlord will be paid rent so long as the use continues, and, as Brown notes, Gureghian conceded that acquisition of this particular property was not crucial to the School's continued existence. This record unequivocally supports the conclusion that the "true" purpose for the taking was primarily to benefit Gureghian and that Brown's challenge to the taking on that basis should be sustained.[3] I therefore would reverse the order of the trial court.

Judge COHN JUBELIRER joins in the dissent.

---

2. Although not applicable to the present controversy, Section 204(a) of the new Eminent Domain Code, 26 Pa.C.S. § 204(a), provides: "**Prohibition.**—Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited."

3. The Authority cites *In re Redevelopment Authority of Philadelphia*, 595 Pa. 241, 938 A.2d 341 (2007), in a supplemental brief filed by permission. The Supreme Court there reversed this Court's determination that taking of a particular property in an area designated blighted many years earlier (where most properties now were vacant) and giving it to a religious organization violated the Establishment Clause of the First Amendment. It is noteworthy, however, that the Supreme Court analyzed the claim of a constitutional violation on the limited facts presented in that case.