IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher E. Masters, | : | |
| Petitioner | : | |
| | : | No.  314 C.D. 2020 |
| v. | : | |
| | : | Argued:  February 9, 2021 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge (**P.**)
            HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  April 19, 2021


Christopher E. Masters (Claimant) petitions for review of the decision of the Unemployment Compensation Board of Review (Board)[1] mailed on February 24, 2020, which determined that Claimant was ineligible for unemployment compensation benefits under sections 402(e) and 3 of the Unemployment Compensation Law (Law).[2] The ultimate issue we are tasked to resolve in this case is whether the Board erred in

---

[1] The Municipality of Monroeville (Employer or Municipality) intervened in this matter and filed a brief.  The Board did not file a brief and is not participating in this appeal.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§802(e), 752, respectively.

determining that Claimant was ineligible for benefits under section 402(e) and/or section 3 of the Law.[3]

### Factual and Procedural Background

Claimant worked full-time for Employer, and was terminated by letter dated September 23, 2019. (Certified Record (C.R.) Item No. 1.) According to the September 23, 2019 letter, Claimant was terminated because Employer became aware that Claimant was dealing drugs from his home. *Id*. Claimant applied for

---

[3] Section 402(e) of the Law provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. § 802(e).

Section 3 of the Law provides in full:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employees during periods when they become unemployed through no fault of their own. The principle of the accumulation of financial reserves, the sharing of risks, and the payment of compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. §752. "Section 3 is used to disqualify claimants for *non-work-related* misconduct which is inconsistent with acceptable standards of behavior and which directly affects the claimant's ability to perform his assigned duties." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 (Pa. Cmwlth. 2013) (quoting *Burger v. Unemployment Compensation Board of Review*, 801 A.2d 487, 491 (Pa. 2002)).

unemployment compensation benefits. The local service center determined that Claimant was ineligible for benefits under section 402(e) of the Law. (C.R. Item No. 5.) Claimant appealed the determination, and a hearing was scheduled before a referee. (C.R. Item Nos. 6, 7.)

## Hearing before the Referee

The referee held a hearing on November 20, 2019. (C.R. Item No. 8.) At the start of the hearing, the referee explained that section 402(e) of the Law and, possibly, section 3 of the Law were at issue. (Notes of Testimony (N.T.) at 2-3.) Detective Lieutenant William Krut (Detective Krut), of the Monroeville Police Department, testified on behalf of Employer. (N.T. at 1, 3.) Detective Krut testified that he arrested Claimant on September 12, 2019, pursuant to a search warrant executed at Claimant's residence. *Id*. at 3. Detective Krut testified that, during the search, he found packaging material for narcotics (*i.e.*, baggies and a scale), a bag of heroin, and a bag of cocaine. *Id*. at 3-4. Detective Krut testified that Claimant admitted to selling drugs from his residence. *Id*. at 4. Employer introduced a copy of the criminal complaint filed against Claimant, and Detective Krut testified that he had firsthand knowledge of the events described therein. *Id*. The complaint was made a part of the record, without objection, and reflected that Claimant was charged with one count of possession with intent to deliver a controlled substance, graded as a felony in the first degree; three counts of possession of a controlled substance, graded as misdemeanors; and one count of prohibited acts for possessing drug paraphernalia, graded as a misdemeanor. (Employer's Exhibit 1.)

Timothy Little (Little), the Municipal Manager of Monroeville, also testified on behalf of Employer. (N.T. at 1, 5.) Little testified that it is his responsibility as municipal manager to oversee all municipal departments, and to hire and fire

3

employees under the Monroeville Home Rule Charter (Charter).[4] *Id*. at 6. Importantly, Little testified that he became aware of Claimant's drug dealing when he was informed through internal channels of the events by the Municipality's Chief of Police, and that this information precipitated his decision to terminate Claimant. *Id*. at 6. Little explained that, after learning of the drugs and paraphernalia found during the search of Claimant's residence, he scheduled a *Loudermill* hearing,[5] and suspended Claimant with pay. *Id*. Little testified that he ultimately decided to terminate Claimant under section 1507 of the Charter, which authorizes termination for "inefficiency, neglect, intemperance, immorality, insubordination, willful disobedience of orders[,] or conduct unbecoming of an employee." *Id*. at 8. Little explained that he had similar authority under sections 4.2(c) and (i) of the employee handbook. *Id*. 8-9. He explained that section 4.2(i) allows the municipal manager to "suspend or dismiss any employee with just cause (*i.e.*, misconduct, incompetency, or insubordination). Specific behavior warranting [termination] include[s], but [is not] limited to . . . violation of State Statutes, Municipal Ordinances, Administrative Policy, departmental regulations and safety practices." (C.R. Item No. 3; N.T. at 8-9.) Little also testified that section 4.2(c) allows him to dismiss an employee for conduct that reflects badly on the Municipality. (N.T. at 7, Employer's Exhibit 3.)

Claimant testified on his own behalf. *Id*. at 10. He admitted he had a "drug problem," but argued that he should be entitled to unemployment compensation

---

[4] A Home Rule Charter is "[a] written document defining the powers, structure, privileges, rights and duties of the municipal government and limitations thereon. The charter shall also provide for the composition and election of the governing body, which in all cases shall be chosen by popular elections." 53 Pa.C.S. §2902.

[5] A *Loudermill* hearing is provided to public employees prior to discharging them or impacting their property right to employment. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 533 (1985).

benefits because his drug possession and drug dealing occurred outside of work. He also pointed out that he had not yet been convicted of any crime. *Id*. at 10-11.

The referee determined that Claimant was ineligible for benefits under section 402(e) of the Law. (C.R. Item No. 9.) According to the referee, since Employer terminated Claimant for violating various work rules, the claim should be analyzed under section 402(e) of the Law (for the violation of a work rule), rather than section 3 of the Law (for non-work-related misconduct). *Id*. The referee explained that Employer's burden under section 402(e) of the Law was satisfied because Employer proved that it had a work rule which Claimant violated. *Id*. Claimant appealed to the Board.[6]

### Claimant's Appeal to the Board

The Board made its own findings of fact. (Board's Decision at 1.) It found that Claimant's employment began on May 21, 2000, and his last day of work was September 12, 2019. (*Id*., Findings of Fact (F.F.) No. 1.) On September 12, 2019, Claimant was arrested on drug charges in his home. (F.F. No. 3.) Claimant admitted he sold cocaine from his home. (F.F. No. 4.) At the *Loudermill* hearing, Claimant asked for help with his drug problem. (F.F. No. 6.) Employer's policies, of which Claimant was or should have been aware, prohibit "inefficiency, neglect, intemperance, immorality, insubordination, willful disobedience of orders[,] or conduct unbecoming of an employee." (F.F. No. 2.) Little, as the municipal manager, is empowered to suspend or dismiss an employee for "conduct which reflects unfavorably on the municipality, disorderly conduct, and violation of state statutes and municipal

---

[6] Prior to the Board rendering a decision, Claimant, *via* counsel, requested a remand hearing for the referee to hear "newly discovered and agreed upon relevant evidence." (C.R. Item No. 13.) The Board denied this request in its decision. (C.R. Item No. 14, Board's Decision at 3.)

5

ordinances." *Id*. Claimant was terminated for "conduct unbecoming [of] an employee." (F.F. No. 7.)

The Board explained that, when Claimant was arrested on drug charges at his home, he admitted to a detective that he sold drugs from his home. The Board found that drug dealing violated Employer's policy, including the provisions that prohibits the engaging in conduct that violates state statutes and conduct unbecoming an employee. (Board's Decision at 2.) Thus, the Board determined that Employer met its burden of proof under both section 3 and section 402(e) of the Law. *Id*. The Board determined that under section 402(e) of the Law, Claimant was ineligible for benefits because he violated Employer's policies. *Id*. However, the Board also analyzed Claimant's conduct under section 3 of the Law, because the alleged misconduct occurred outside of work and when Claimant was off-duty. (Board's Decision at 3.) The Board recognized that a mere arrest, without a conviction, would be insufficient to prove willful misconduct under the Law, but Claimant nevertheless admitted to selling drugs from his home. *Id*. The Board concluded that Claimant's admission that he was dealing illegal drugs from his home satisfied Employer's burden to prove that Claimant's conduct directly impacted his ability to perform his assigned duties for the Municipality. *Id*. The Board concluded that Claimant was thus ineligible for benefits. *Id*. Claimant now appeals to this Court.

## Discussion

### A. Claimant's Eligibility for Benefits

On appeal,[7] Claimant argues the Board erred when it found that he was ineligible for unemployment compensation benefits under section 402(e) of the Law

---

[7] Our "review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial **(Footnote continued on next page…)**

6

because his drug possession and drug dealing occurred while he was off-duty. He argues that, because his drug possession and drug dealing occurred off-premises and while he was off-duty, this claim for benefits should be analyzed under section 3 of the Law. Notably, Claimant does not argue that the evidence was insufficient to prove his willful misconduct. He admits he used illegal drugs and dealt illegal drugs from his home. He does not contest that drug dealing is a violation of Employer's rules and policies. He also does not contest that his drug possession and drug dealing were the reasons he was fired. He contends, however, that because these crimes occurred off-premises and while he was off-duty, Employer was required to demonstrate under section 402(e) of the Law that his misconduct affected his work performance.[8] We rejected a similar argument in *Maskerines v. Unemployment Compensation Board of Review*, 13 A.3d 553, 554 (Pa. Cmwlth. 2011).

In *Maskerines*, we addressed the issue of whether the Board erred in failing to require the employer to bear the burden to prove under section 402(e) of the Law that the conduct in question directly affected Claimant's workplace performance. *Id*. at 555. We held that, where a claimant violates an employer's work rule while off-duty, and the employer discharges the employee for violating that work rule, section 402(e) of the Law applies and the employer **is not required to prove that the**

---

evidence." *Palladino*, 81 A.3d at 1100 n.3. Whether a claimant's conduct is sufficient to make him ineligible for benefits under section 3 of the Law is a question of law subject to this Court's review. *Horsefield v. Unemployment Compensation Board of Review*, 531 A.2d 829 (Pa. Cmwlth. 1987).

[8] In some cases, under section 402(e) of the Law, a claimant will be found ineligible for benefits if the off-duty conduct affected his workplace performance. "Off-duty misconduct will not support a finding of willful misconduct under [s]ection 402(e) unless it extends to performance on the job[.]" *County of Allegheny/Fifth Judicial District of Pennsylvania v. Unemployment Compensation Board of Review*, 210 A.3d 1140, 1144 (Pa. Cmwlth. 2019).

7

**employee's conduct affected his work performance**. In *Maskerines*, the claimant was discharged from work after admitting that he possessed and used marijuana while off-duty and off the employer's premises. *Id*. at 554. The employer's work rule prohibited possession and use of drugs. *Id*. at 555. The Board found that the claimant had admitted to the employer's human resources director that he possessed and used marijuana. *Id*. The Board applied section 402(e) of the Law to conclude that the claimant's possession and use of marijuana violated the employer's work rule and constituted willful misconduct. *Id*. No argument was raised by the claimant in *Maskerines* that he did not violate the employer's no-drug work rule, nor did he challenge the reasonableness of the no-drug rule. *Id*.

Claimant here also fails to argue that he did not violate Employer's work rules, or that the rules were unreasonable. Rather, as in *Maskerines*, Claimant argues that because his conduct occurred off-duty and off-premises, the employer was required under section 402(e) to prove that the conduct directly impacted his work performance. *Id*. at 556. However, in *Maskerines* we explained that

> where an employer seeks to deny a discharged employee unemployment compensation benefits *pursuant to [s]ection 3 of the Law*,[] the employer bears the burden of showing that the alleged misconduct directly affects an employee's ability to perform his or her assigned duties. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1154 ([Pa.] 1993). Where an employer seeks to deny a discharged employee unemployment compensation benefits for a work rule violation *pursuant to [s]ection 402(e)*,[] the employer must prove only that the work rule existed and that the employee violated it. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 ([Pa.] 1997). **Because [the claimant] was discharged for a work rule violation, the Board applied [s]ection 402(e) to the case, and [the employer] was not required to show that [the claimant's] possession of**

8

> **marijuana off-premises directly affected [the claimant's] job performance.**[] Section 3 and [s]ection 402(e) are not parallel legal theories, but are independent bases on which to deny an employee unemployment compensation, and the legal analysis under each section is different. *Burger v. Unemployment Compensation Board of Review*, [801 A.2d 487, 491-92 (Pa. 2002)]; *Gillins*, [] 633 A.2d at 1156.

*Maskerines*, 13 A.3d at 556-57 (bold emphasis added, italicized emphasis in original, footnote ommitted).

Here, as in *Maskerines*, Claimant was terminated from his employment ***because his off-duty sale and possession of drugs violated Employer's work rule***. (F.F. No. 4.) Employer established that it had work policies that prohibit employees from "immorality," "conduct unbecoming an employee," and "conduct which reflects unfavorably on the municipality."[9] (F.F. No. 2.) Like in *Maskerines*, the Board concluded that Claimant was ineligible for benefits under section 402(e) of the Law due to his violation of Employer's work rule. We agree Employer was not required to demonstrate that Claimant's performance was affected by his off-duty conduct.

Employer cites *Elser v. Unemployment Compensation Board of Review*, 967 A.2d 1064, 1070 (Pa. Cmwlth. 2009), arguing that under section 3 of the Law, "if an examination of all of the relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk*[10] test is

---

[9] As noted, Claimant does not challenge the Board's finding that the sale and possession of illegal drugs constitutes "immorality," "conduct unbecoming an employee," and "conduct which reflects unfavorably on the municipality." Therefore, we need not delve into that issue.

[10] "Under [s]ection 3[,] the employer must demonstrate 1) that the claimant's conduct was contrary to acceptable standards of behavior and 2) that the claimant's unacceptable conduct directly affects or reflects upon the claimant's ability to perform his assigned duties." *Frazier v.*
**(Footnote continued on next page…)**

9

satisfied." (Employer's Br. at 11 (quoting *id.*)) *Elser* is distinguishable from the instant matter.

In *Elser*, the claimant's employer was a residential treatment facility for at-risk boys between the ages of 14-20 who were adjudicated delinquent by the court system. *Id.* at 1066. The employer had a community relations and public conduct policy which stated that employees must obey the laws of the community and exercise common sense in realizing that certain types of behavior (*i.e.*, public drunkenness, fighting, and theft) are illegal. *Id.* The claimant held a dinner party with his co-worker and his co-worker's girlfriend. *Id.* at 1067. There, the claimant asked his co-worker if he had any "weed" and made graphic and malicious statements about two former employees. *Id.* Specifically, he claimed that one of the former employees performed sexual acts on students, and referred to another former employee as a "w[***]e." *Id.* at 1068. The claimant was terminated for violating the community relations policy. *Id.* at 1067.

The referee determined that the claimant was ineligible for benefits under section 402(e) of the Law, finding that the claimant engaged in willful misconduct. *Id.* at 1068. The Board affirmed, concluding that the claimant was ineligible under section 402(e) of the Law because he violated the employer's work policy. *Id.* at 1069. Furthermore, the Board concluded that under section 3, the claimant's remarks were unacceptable to the public standards of behavior and directly affected his ability to perform his duties at a school for troubled teens. *Id.*

On appeal, we held that the claimant was not ineligible under section 402(e) of the Law for violating a work rule because the claimant's conduct did not

---

*Unemployment Compensation Board of Review*, 833 A.2d 1181, 1185-85 (Pa. Cmwlth. 2003). This has become known as the *Derk* test. *See Unemployment Compensation Board of Review v. Derk*, 353 A.2d 915 (Pa. Cmwlth. 1976).

violate the terms of the policy. *Id*. at 1070. We explained that the employer's policy related to violation of public laws, and that although the claimant's comments were distasteful, they did not violate any law. *Id*. Here, unlike *Elser*, we need not analyze whether Claimant's conduct violated Employer's policy. Instantly, Claimant's *only* argument is that Employer was required to show that his performance was affected due to his off-duty misconduct. As we explained above, under *Maskerines*, Employer need not make this showing.[11]

---

[11] Further, this Court need not analyze Claimant's conduct under section 3 of the Law, due to our conclusion under section 402(e) of the Law. However, were we to address Employer's argument under section 3 of the Law as it pertains to Employer's argument under *Elser*, we note the following. In *Elser*, we also considered whether the claimant's conduct was sufficient under section 3 of the Law to directly affect his ability to perform his work duties. We explained that

> if an examination of all relevant circumstances, including and especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test is satisfied. While a consideration of claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties.

*Elser*, 967 A.2d at 1070. We held that although the claimant was able to perform his duties, it was the nature of his offense and his position as a principal of a facility for adjudicated youths that was troubling. *Id*. at 1071. This Court concluded that the claimant had a responsibility to conduct himself in a manner not adverse to the employer's interests, even while off-duty. *Id*.

Employer asserts that Claimant, as a public employee, admitted to selling drugs from his residence, and this conduct was so inimical to the interest of Employer, it warrants the loss of benefits. However, the facts here are distinguishable from *Elser*. In *Elser*, evidence showed the claimant was the principal of the facility, in charge of staff and curriculum development, personnel discipline, supply chain, interdepartmental meetings, licensing and teaching certification. *Id*. at 1071. We emphasized that the claimant, "as principal of the facility and in a management position, even away from [the e]mployer's premises, [had] a responsibility to [the employer] to conduct himself in a matter that is not adverse to [the employer's] interests." *Id*. Here, even though under *Elser*, Employer was not required to present evidence of Claimant's specific duties, there was no evidence of any of Claimant's job duties. It was important to the conclusion in *Elser* that the claimant was in a *management position* and had a responsibility to conduct himself in a manner consistent with the

**(Footnote continued on next page…)**

11

## B. Constitutional Challenges

Next, Claimant purports to raise a constitutional argument in the question presented portion of his brief and in a heading on page 11 of his brief, which states that "[t]he final agency determination dated February 24, 2020 constituted a constitutional violation." (Claimant's Br. at 11.) However, aside from the heading, there is no accompanying argument or analysis. Arguments that are not developed by providing case law or record evidence are deemed to be waived and we are precluded from addressing such issues. *School District of Philadelphia v. Jones*, 139 A.3d 358, 365 (Pa. Cmwlth. 2016) (citing *In Re Condemnation of Land for South East Central Business District Redevelopment Area No. 1*, 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008)). "'We decline to become substitute counsel for [petitioner],' and as such, 'we will deem an issue abandoned where it has been identified on appeal but not properly developed in [petitioner's] brief.'" *Aveline v. Pennsylvania Board of Probation and Parole*, 729 A.2d 1254, 1256 n.5 (Pa. Cmwlth. 1999) (citation omitted). Here, Claimant merely mentions alleged "constitutional violations" in a heading and provides no substance developing these issues on a factual or legal basis. He fails to support these claims with pertinent discussion, references to the record, or citations to legal authorities. Because he has failed to discuss these issues or to develop them in the arguments that follow, we conclude he has waived any claims suggested in his headings.[12]

---

employer's interests off-duty. Here, there is no evidence as to what Claimant's job duties were, and thus, we do not have the factual basis here, to conclude as we did in *Elser*.

[12] On page 12 of his brief, Claimant appears to challenge a factual finding made by the referee that Claimant's performance was affected by his drug use. First, we are unable to locate any such finding by the referee. More importantly, our review is limited to the findings as made by the Board, not the referee. In unemployment compensation cases "[i]t is well settled that the Board is the ultimate fact finder . . . ." *Cambria County Transit Authority v. Unemployment Compensation Board*
**(Footnote continued on next page…)**

Accordingly, the Board's decision is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

*of Review*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (quoting *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016)). Thus, the sufficiency of the facts as found by the referee is of no moment.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher E. Masters,          :
          Petitioner         :
                                 :   No.  314 C.D. 2020
          v.                  :
                                 :
Unemployment Compensation   :
Board of Review,             :
          Respondent     :

## ***ORDER***

AND NOW, this 19th day of April, 2021, the February 24, 2020 decision of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge