John J. Cowls, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 11, 1980, before Judges CRAIG, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*John J. Cowls,* petitioner, for himself.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., March 31, 1981:

John J. Cowls, a claimant for unemployment compensation, appeals from an order of the Unemployment Compensation Board of Review denying him benefits. The Board affirmed a referee's decision that the claimant had voluntarily quit his employment without cause of a "necessitous and compelling nature," and was thus ineligible for benefits by force of Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

Until December 15, 1978, Cowls was employed as a driver-salesman for the Kline Linen and Union Service, being paid $6.10 per hour plus overtime. On December 6, 1978, the employer announced a rule that all driver-salesmen had to complete their assigned

routes within 8 hours a day and that no overtime would be paid. The claimant protested this directive, stating that he could not complete his route by working 8 hours a day or 40 hours a week but needed between 46 and 48 hours a week to do so. The claimant took the position that without overtime pay he would have to work more than the other salesmen, that he would not be treated equally.

According to the employer's evidence before the referee, the employer undertook to discuss the matter with the claimant and to resolve the dispute just before the claimant quit. The employer's representative testified that on December 15, 1978, he told the claimant that within a few weeks all routes would be adjusted so that each route could be completed within a 40-hour work week. The claimant was told that in the interim he could take as much time as he needed for his assignment. This employer witness also testified that the promise of adjustment did not satisfy the claimant and that the claimant demanded a written authorization to use more than 40 hours a week to complete his route. Upon being told that no such *written* authorization would be given, the claimant quit his job.

A claimant becoming unemployed by voluntarily quitting his job assumes the burden of showing that such termination was for cause of a "necessitous and compelling nature." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). The Board is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *E.g., Crilly v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 221, 397 A.2d 40 (1979). Acting within its province the Board accepted the testimony of the employer's representative that the claimant was told routes would be adjusted in the oncoming weeks

and was told that in the interim he could take as much time as he required to finish his route. The Board also accepted the testimony of the employer's representative that the claimant also demanded a *written* authorization to work overtime as a condition to remaining on the job.

In the case of a "voluntary quit" a claimant for unemployment compensation must show that he acted with ordinary common sense in quitting. *E.g., Sileo v. Unemployment Compensation Board of Review*, 53 Pa. Commonwealth Ct. 632, 419 A.2d 223 (1980); *Rizzitano v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 59, 377 A.2d 1060 (1977). So too, such a claimant must establish that he made a reasonable effort to preserve his employment and that he had no real choice but to leave his employment. *Sileo, supra; Kovarik v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 165, 387 A.2d 521 (1978). Upon the evidence and findings in this case it cannot be said that claimant Cowls acted with ordinary common sense in quitting or that he made a reasonable effort to preserve his employment or that he had no real choice but to leave. Certainly the claimant could have exercised a stronger measure of patience by allowing his employer a few weeks to adjust the routes, especially after the claimant was told that he could, in the interim, work as many hours as needed to finish his route. There is nothing in this case to indicate that, when the employer told the claimant he could work extra hours until the routes were adjusted, the employer was suggesting that the extra hours would not be compensated for at overtime rates.[1]

---

[1] In *Leshock v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 486, 406 A.2d 1182 (1979), we rejected an argument seeking to justify a "voluntary quit" on the basis of the overtime provision in Section 4(c) of The Minimum

For the reasons set forth the order of the Board denying benefits is affirmed.

ORDER

AND NOW, the 31st day of March, 1981, the order of the Unemployment Compensation Board of Review at Decision No. B-173187, denying benefits, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON, JR.

---

Wage Act, Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. §333.104(c), pointing out that there was no evidence to show the claimant was ever paid less for his services than The Minimum Wage Act required. In the case at bar the claimant makes no such argument; and there is nothing in the evidence to indicate that his compensation for the extra hours would violate the overtime provision of The Minimum Wage Act.