578 A.2d 621

**SHEETZ, INC., Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted May 23, 1990.

Decided Aug. 6, 1990.

Anand K. Rajan, Asst. Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

David P. Andrews, with him, Cynthia A. Yeager, Andrews and Wagner, for petitioner.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Sheetz, Inc. (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) which reversed the decision of the Referee denying Gerald P. Hoover (Claimant) unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), for willful misconduct resulting in his discharge from employment.

Claimant was employed as a manager of one of Employer's convenience stores from May of 1989 to February 1, 1990.[1] Claimant was a salaried employee but was required to punch a time clock to verify the number of hours he worked. The Employer's policy regarding the time clock, of which Claimant was aware, was that once an employee punched in on the time clock, he was required to remain at work and perform his duties.[2] As a manager, Claimant was required to work fifty hours per week.[3] In addition to his regular duties, Claimant was expected to work approximately twenty hours per week overtime to covertly observe other employees who were working to ensure that they were performing their jobs properly. Because the observation had to be done in a secret room without the knowledge of the employee who was being observed, the observation

1. Claimant had been hired by Employer in September of 1982 as a manager in the restaurant division. Claimant worked in that capacity until February, 1989, at which time he was transferred to the convenience store division to be trained to work as a manager at one of Employer's convenience stores beginning in May of 1989.

2. The Employer did allow employees to leave the work premises once they punched in on the time clock if they were conducting the Employer's business while they were gone from the store. For example, the Employer permitted employees to make bank deposits, pick up supplies from other stores and to attend company meetings.

3. Claimant was not paid compensation for any time worked in excess of fifty hours unless Claimant was filling in for another employee who was absent from work. In that case, Claimant would be paid the rate per hour that the absent employee was normally paid.

had to be done before or after Claimant had put in a full day of work. As a result, when Claimant had spent time observing employees, Claimant actually worked an average of seventy hours per week, of which twenty hours were not compensated.[4]

On February 1, 1989, Claimant was scheduled to work a double shift from 8:00 a.m. to midnight. According to the Board's findings, on February 1, 1989, at approximately 1:30 a.m., Claimant entered the observation room in the store to observe a new employee on duty. After observing the employee for two hours, Claimant fell asleep and did not wake up until 6:00 a.m. Once Claimant awoke, he punched in on the time clock. Claimant then realized that he did not have the keys to the store's safe and left the store to go home to retrieve the keys. Claimant did not punch out on the time clock before he left the store. While at home, Claimant fell asleep and did not wake up until 7:50 a.m. When Claimant awoke, he called the store and told the employee on duty that he would be back in the store within twenty minutes. The employee on duty, however, had to take his son to school at 8:00 a.m. Because he did not want to leave the store unattended, he closed the store for a few minutes to make a few phone calls to locate someone who could take his son to school. Claimant arrived at the store at 8:20 a.m., but did not punch in on the time clock and did not inform his supervisor about what had transpired.

A supplier who had tried unsuccessfully to make a delivery during the time the store had been closed, informed the supervisor that he was unable to do so because there was no one at the store when he arrived. After Claimant's supervisor investigated the complaint, Claimant was discharged on February 10, 1989, for violating the Employer's policy regarding the time clock because he had punched in on the time clock but did not report for work.

4. This total number of overtime hours worked without compensation does not include the additional hours Claimant spent after he had punched out on the time clock attending company meetings, completing paperwork and calling references for applicants from his home.

Claimant filed a claim for unemployment compensation benefits with the Office of Employment Security (OES). The request for benefits was denied on the basis of Section 402(e), as a discharge from work due to willful misconduct connected with the job. On appeal, the Referee issued a decision affirming the OES. Claimant then appealed the Referee's decision to the Board which issued a decision reversing the Referee's decision. The instant appeal by the Employer followed.

The issue now before us is whether the Board erred in determining that Claimant's violation of his Employer's policy regarding the time clock did not amount to willful misconduct, and that Claimant was entitled to receive unemployment compensation benefits.

The Employer contends that the Board erred in granting Claimant unemployment compensation benefits because Claimant was aware of the Employer's policy regarding the time clock, and Claimant knowingly disregarded that policy by punching in on the clock and then leaving the store for reasons other than conducting the Employer's business.[5]

Section 402(e) of the Law provides:

---

**5.** The Employer stated that Claimant's conduct of punching in on the time clock and leaving the store for reasons other than conducting the Employer's business constituted willful misconduct. However, the required overtime hours which Claimant is scheduled to work without compensation violates both state and federal wage laws unless Claimant qualifies as "management" under Section 7(a) of the Fair Labor Standards Act of 1938, *as amended,* 29 U.S.C.S. § 207(a)(1) and Section 4(c) of the Pennsylvania Minimum Wage Act of 1968, Law of January 17, 1968, P.L. 11, *as amended,* 43 P.S. § 333.104(c).

One of the requirements which must be fulfilled to qualify as management is that Claimant be paid a salary which is not subject to reduction because of variations in quality or quantity of work performed. 29 C.F.R. § 541.118(a). The Employer's contention that Claimant is attempting to be paid for work he did not perform is an attempt by the Employer to "have his cake and eat it too."

Because the Employer considered Claimant "management", i.e. not eligible for overtime compensation, the Employer cannot now maintain that Claimant's actions of going home to retrieve the store keys, falling asleep, and failing to tell his supervisor about what happened, was an attempt to be paid for hours not worked when, in fact, a salaried employee is not paid according to the number of hours he

An employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

■ For behavior to constitute willful misconduct, the employee's behavior must evidence (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employer's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973).

■ In this case, Claimant had worked a twelve hour day on January 31, 1989. Specifically, Claimant had worked from 7:00 a.m. to 7:00 p.m. After finishing his shift and leaving work, he went home and slept from 11:00 p.m. to 1:00 a.m. Claimant then, on uncompensated time, returned to the store shortly before 1:30 a.m. to observe a new employee on duty, even though Claimant was aware that he would have to begin working his shift at 8:00 a.m. Claimant observed the new employee from 1:30 a.m. to 3:30 a.m., and then fell asleep for approximately two and one-half hours, awaking shortly before 6:00 a.m. In total, Claimant slept four and one-half hours that night before beginning his shift that morning. Claimant left work only with the intention of retrieving the keys he needed to perform his job that day. While Claimant admitted that he knew he was not to leave the work premises once he had punched in on the time clock, Claimant stated that the Employer had permitted him to leave the store in the past without punching out on the time clock when conducting the Employer's

actually works and deductions from his salary in such instances is not permitted.

business. In this instance, Claimant believed he was doing so when he went to retrieve his Employer's keys.

The Board determined that although Claimant had violated the Employer's policy, Claimant was dedicated to his duties, as was evidenced by the fact that Claimant routinely worked twenty hours more per week than was required or for which he was compensated. Further, Claimant had never received a written or verbal admonition from the Employer for an infraction of the Employer's policy during his six years of employment. Based on those considerations, the Board concluded that Claimant's conduct was an isolated deviation from the strict adherence to the Employer's policy and did not constitute willful misconduct.

The Board is the ultimate factfinder and is empowered to resolve conflicts in the evidence and determine the credibility of the witnesses. *Cowls v. Unemployment Compensation Board of Review*, 58 Pa.Commonwealth Ct. 150, 427 A.2d 722 (1981). Because the findings of fact made by the Board are binding on appeal as long as the record contains substantial evidence in support of those findings, we hold that the Board's findings were supported by substantial evidence, and therefore, are binding on this court. *N.A. Klinger v. Unemployment Compensation Board of Review*, 127 Pa.Commonwealth Ct. 293, 561 A.2d 841 (1989).

Consequently, because Claimant's behavior did not amount to misconduct, let alone willful misconduct, we find that the Board's award of benefits was sound. Accordingly, we affirm the decision of the Board.

Senior Judge SILVESTRI dissents.

## ORDER

AND NOW, this 6th day of August, 1990, the Order of the Unemployment Compensation Board of Review, dated December 20, 1989, No. B–278085, is affirmed.