**Robert L. ELSER, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 20, 2009.

Decided March 12, 2009.

David R. Hull, Franklin, for petitioner.

Janet Tarczy, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Robert L. Elser (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) denying him unemployment compensation pursuant to Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. § 802(e),[1] because his discharge was for willful mis-

conduct. For the reasons below, we affirm.

VisionQuest (Employer) is a residential treatment facility for at-risk boys ages 14 to 20 who are adjudicated delinquent by the court system. Employer has a policy regarding community relations and public conduct which states:

**POLICY: COMMUNITY RELATIONS & PUBLIC CONDUCT**

You, as an employee of VisionQuest, are expected to conduct yourself in a manner that comports with your responsibilities in the communities in which you are stationed. Because our visibility within a community is highlighted by the type of services that we provide, we expect all employees to conduct themselves in a manner at once appropriate and positive in nature. VisionQuest defines conduct at once appropriate and positive in nature as: obeying the laws of the community in which we as a company reside temporarily or permanently. While you cannot be expected to be aware of every public law, you will be expected to exercise common sense in realizing that certain types of behavior are often times illegal. This may include public drunkenness, fighting (assault), and theft or theft of services. However, VisionQuest will not take disciplinary action if it is evident that local laws are being enforced in a selective or discriminatory fashion. Employees will be subject to disciplinary actions up to and including termination who fail to adhere to the standards herein set forth. Let us all be proud of who we are and respect whom we work for and what Vision-

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). That section provides:

An employe shall be ineligible for compensation for any week—

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

Quest strives to stand for in its pursuit of the betterment of youth in all communities.

Claimant was employed by VisionQuest as a full-time principal on July 16, 2007, and signed an acknowledgement of receipt of Employer's policy which was reviewed with him during his orientation.

On April 2, 2008, Claimant and his wife invited Employer's program administrator, Mark Mazurkewic (Mazurkewic) and his girlfriend over for dinner at their house. During the evening, Claimant inquired if Mazurkewic had any "weed" and made graphic and slanderous comments about two former employees. When Mazurkewic told Employer about those remarks, Employer met with Claimant to confirm what Mazurkewic had relayed and then terminated Claimant on April 8, 2008, for unprofessional conduct in violation of the Community Relations & Public Conduct Policy.

Claimant applied for unemployment compensation benefits with the Erie UC Service Center. The UC Service Center stated that there was a conflict as to whether the incident which caused the separation was work or non-work-related, and both Section 402(e) of the Law, 43 P.S. § 802(e), and Section 3 of the Law, 43 P.S. § 752,[2] had to be considered. It then determined that Section 402(e) was appropriate because Employer proved that Claimant's actions constituted willful misconduct when he made vicious statements unsupported by fact and exposed Employer to liability from slander, and Claimant did not show good cause for his actions.[3]

Claimant appealed to the Referee who conducted a hearing. At the hearing, Paula Mehler (Mehler), Employer's Human Resources Director, testified that there had been an ongoing problem with Claimant's conduct. Claimant had a three month evaluation in October 2007 at which he received a verbal warning regarding his professional conduct. One month later, in November 2007, he had been arrested for DUI and possession of drug paraphernalia which was reported in the local newspaper. Mehler stated that Employer counseled Claimant regarding public relations, his demeanor in public, and especially how important it was because he was Employer's principal and a member of management. She also stated that there had been complaints about him using foul language and inappropriate language in front of the youths in December 2007 for which he was counseled. Mehler stated that she met with Claimant regarding the incident at his home on April 2, 2008, and Claimant denied making any of the remarks to Mehler. Mehler stated that she found Claimant lacking in credibility while she found Mazurkewic credible regarding the incident because he had been with Employer for a long time and had never made any allegations previously about another employee. However, Mehler admitted that Claimant

2. 43 P.S. § 752 provides, in relevant part:
   ... The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

3. In Employer's questionnaire that was filled out for the UC Center, it stated that Claimant

had two verbal warnings prior to his discharge. The first was on October 19, 2007, relating to public conduct at a local bar where he was saying negative things about Employer. In November 2007, Claimant was arrested for drunken driving, possession of a controlled substance and possession of drug paraphernalia. Upon learning of Claimant's arrest, Employer counseled Claimant about his violation of its community relations and public conduct policy.

was not terminated after the three-month evaluation or the DUI arrest. She also admitted that the dinner party had no relation to Claimant's job.

Mazurkewic also testified regarding the dinner at Claimant's house when Claimant made statements regarding a co-worker, Robert Lee, who died and Claimant implied that Employer killed him.[4] Mazurkewic also stated that Claimant made statements that a female co-worker was performing sexual acts on students in her office but nothing was being done about that by Employer. He specified that Claimant accused the employee of performing oral sex and having intercourse with the youths in the facility and called her a whore.

Claimant testified that he was principal of the facility and was responsible for staff and curriculum development, personnel discipline, physical plant supplies, interdepartmental meetings, licensing and teacher certification.[5] Regarding the dinner party he had at which Mazurkewic was present with his girlfriend, he stated that it was not work-related. He denied asking Ma-

zurkewic if he had any "weed" or making any negative comments about any other co-workers on behalf of Employer. He stated that they were merely discussing the individuals' situations and was repeating information he had heard.

The Referee affirmed the denial of benefits under Section 402(e) of the Law finding that Claimant was guilty of willful misconduct because Employer had a specific policy regarding community relations and public conduct of which Claimant was aware, he had previously been counseled regarding the policy and his violation of that policy, and Claimant's actions at the dinner party were a disregard of the behavior that an employer had the right to expect of an employee. The Referee did not discuss Section 3 of the Law.

Claimant appealed to the Board arguing that the Referee erred because his actions did not violate any of Employer's rules and did not constitute willful misconduct. Further, there was no violation under Section 3 of the Law because his alleged off-duty misconduct did not affect his ability to

---

4. Mazurkewic testified:
   He was clearly very hurt by, you know, his death and how he died but he came out and said, you know, they killed him. They killed my buddy. You know we were going to go on and do—they had plans professionally to work together with Robert Lee's department and Robert Elser's department and combining ideas and ethics and stuff, so obviously he was very hurt how he tragically died, but, you know, and then he said VisionQuest killed him and did nothing about it and it's going to happen again and we all dealt with that, you know. He was not singled out. He was probably closer to Robert Lee than I was, you know, professionally and as a friend, but I kind of dealt with it and made my choices to try to move on, you know, in his absence.
   (May 27, 2008 Hearing Transcript at 14.) In Mazurkewiz's letter to Employer, he stated that at Claimant's home, Claimant told him: "And then 'they killed Robert Lee.' 'My pal my best buddy man!' 'Dead!' 'He got his

   head squashed like a pumpkin, man, and nothing f* * *in' happened!" (Exhibit 5 of Original Record.)

5. Claimant argued that he was terminated because it was a business decision and it was a financial incentive, i.e., that his funding was cut and he was not able to perform the duties for which he was hired. He explained that he was hired from a different place in Philadelphia and put into a situation where he wasn't really wanted or appreciated. He was finally moved into a classroom and then his funding was cut. "It became clear to me that I would be terminated at any time because at the time I was in the classroom as a teacher when they could have paid someone else a whole lot less than they were paying me to do the same thing." (May 27, 2008 Notes of Testimony at 20.) There was no testimony from Employer regarding Claimant being a teacher or his termination for this reason.

perform his job. The Board affirmed the Referee under Section 402(e) of the Law concluding that Employer's witnesses were credible and that Employer had established that it maintained a specific policy regarding community relations and public conduct. It also concluded that Claimant was aware of the policy and had been warned about its violation in November 2007. Further, Claimant's comments in front of a fellow employee and his girlfriend, not an employee but a member of the community, was a violation of Employer's policy. "The claimant's comments, especially the graphic nature regarding the female employee, calling her a wh*re, and the unfounded sex act allegations with the students, were inappropriate, negative, and potentially slanderous. The burden then shifts to the claimant to prove good cause for his violation." (Board's July 30, 2008 decision at 3.) Although Claimant argued that he was in his home and not at work when the comments were made, the Board rejected his argument stating that because the comments were made in front of the co-worker's girlfriend, they were made in public.

■ The Board also addressed Claimant's argument that Section 3 of the Law applied—that Employer had the burden of proving that his conduct was unacceptable to public standards of behavior and that this behavior directly affected his ability to perform his duties. The Board pointed out that Claimant was the principal of a

school for troubled teens yet he asked a fellow employee and his girlfriend if they smoked "weed," made graphic and slanderous comments about two former employees, accused Employer of killing one of those former employees, and called another of those former employees a whore and accused her of performing sex acts on students in her office. The Board found that Claimant's comments were unacceptable to public standards of behavior and they diminished his status and reputation; therefore, his behavior directly affected his ability to perform his duties as principal of a school for troubled teens and he was not entitled to benefits. This appeal by Claimant followed.[6]

■ Claimant contends that the Board erred in determining that Employer met its burden of establishing willful misconduct[7] because the conversation he had with Mazurkewic in the privacy of his home after work hours was not work-related for the purposes of Section 402(e) of the Law. We agree.

■ Although the Referee found that Claimant's actions at the dinner party were a disregard of the behavior that an employer had the right to expect of an employee and found him guilty of willful misconduct for that reason, Employer testified that it only terminated Claimant for violating its policy and nothing else, and the Board denied benefits for that reason.[8]

6. Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated or findings of fact were supported by substantial evidence. *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181 (Pa.Cmwlth.2003).

7. Willful misconduct has been defined as (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully

expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Sheetz, Inc. v. Unemployment Compensation Board of Review*, 134 Pa.Cmwlth. 353, 578 A.2d 621 (1990).

8. The Board is the ultimate factfinder in unemployment compensation cases and is empowered to make credibility determinations. The Board's findings of fact are conclusive

Employer's policy specifies that for there to be a violation of its policy, an employee's conduct must not meet the definition of "conduct at once appropriate and positive in nature as: obeying the laws of the community in which we as a company reside temporarily or permanently. While you cannot be expected to be aware of every public law, you will be expected to exercise common sense in realizing that certain types of behavior are often times illegal. This may include public drunkenness, fighting (assault), and theft or theft of services." Nothing that took place in the privacy of Claimant's home falls within this definition. Although the Board found that because Mazurkewiz's girlfriend was present and heard Claimant's comments, thereby rendering them "inappropriate, negative, and potentially slanderous" (Board's July 30, 2008 decision at 3), that still does not bring those comments within the definition of Employer's policy. No public law was broken and a "potentially slanderous" comment is not, in fact, slander.

■ That, however, does not end the inquiry. When a claimant is discharged for off-duty misconduct unrelated to his work, eligibility for benefits must be analyzed under Section 3 of the Law. *Kiehl v. Unemployment Compensation Board of Review*, 747 A.2d 954 (Pa.Cmwlth.1999). Under Section 3 of the Law, to prove misconduct while off an employer's premises, Employer bears the burden that his conduct was unacceptable to public standards of behavior and that this behavior directly affected his ability to perform his duties. *Unemployment Compensation Board of Review v. Derk*, 24 Pa.Cmwlth. 54, 353 A.2d 915 (1976).

upon appeal; however, the legal conclusions drawn by the Board from its findings of fact remain subject to judicial review. *McCarthy*

■ In determining whether Claimant's behavior directly affected his ability to perform his job duties, the Board should make specific findings on the following: (1) the nature of Claimant's assigned duties; (2) the specific nature of the offense committed by Claimant; (3) whether Claimant's job required any special degree of trust on the part of Employer, considering whether the Claimant worked with items of value and whether he was normally under the direct supervision of Employer; and (4) any other circumstances which might particularly affect Claimant's ability to do his job, including whether the crime/offense occurred on or off Employer's premises and whether or not it involved any of Employer's other workers or clients. *Robinson v. Unemployment Compensation Board of Review*, 119 Pa. Cmwlth. 133, 546 A.2d 750 (1988). In *Sheaffer v. Unemployment Compensation Board of Review*, 92 Pa.Cmwlth. 431, 499 A.2d 1121 (1985), we stated that the factors relevant to this determination included the specific nature of the offense, but no single factor was necessarily dispositive of the issue of whether the claimant's conduct reflected adversely on his fitness to do his job. "Rather, if an examination of all relevant circumstances, including especially the nature of the conduct in question, leads to the conclusion that a claimant's conduct is incompatible with his job responsibilities, then the second prong of the *Derk* test is satisfied. While a consideration of a claimant's specifically assigned duties may be relevant to this determination, if it is otherwise apparent that the claimant's conduct was inimical to the interests of his employer, it is not necessary for an employer to present into evidence a description of a claimant's specific duties." *Id.*, 499 A.2d at 737.

*v. Unemployment Compensation Board of Review*, 829 A.2d 1266 (Pa.Cmwlth.2003).

Claimant argues that Section 3 of the Law does not apply to this matter because on Employer's questionnaire submitted to the UC Center, Employer specifically answered that Claimant's actions causing his termination "did not affect his ability to perform his job." He then reiterates his job description as principal and argues that his comments during the dinner party have absolutely no bearing on his ability to perform his functions as principal.

Employer testified that Claimant's comments at his dinner party were unacceptable to public standards due to its content, and we agree that type of conduct would be contrary to his position. Although Employer specified on the UC questionnaire that Claimant's actions causing his termination did not actually affect his ability to perform his job, under the standards set forth in *Robinson* and *Sheaffer*, we disagree with Claimant that his conduct during the dinner party does not preclude the denial of unemployment compensation benefits. While he may be able to perform his particular duties as principal—staff and curriculum development, personnel discipline, physical plant supplies, interdepartmental meetings, licensing and teacher certification—it is the nature of the offense and Claimant's position as principal of a facility for adjudicated youths that is troubling to this Court. Claimant fails to realize that as principal of the facility and in a management position, even away from Employer's premises, he has a responsibility to Employer to conduct himself in a manner that is not adverse to Employer's interests. By Claimant asking a co-worker if he has any "weed" upon his arrival for a dinner party, making slanderous and lewd remarks about a female co-worker, and slandering Employer in reference to killing another co-worker, such conduct does not depict an individual who has the interests of his Employer at heart and whose conduct does have bearing on his ability to perform his job.

Accordingly, because Claimant is ineligible for benefits under Section 3 of the Law, the order of the Board is affirmed and benefits are denied.

## ORDER

AND NOW, this 12th day of March, 2009, the order of the Unemployment Compensation Board of Review, dated July 30, 2008, is affirmed.