IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Regina S. Guidera,                          :
                 Petitioner       :
                                            :
      v.                                  :
                                            :
Unemployment Compensation                   :
Board of Review,                            :    No. 1543 C.D. 2022
              Respondent       :    Submitted: July 5, 2024

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON             FILED: December 18, 2024


Regina S. Guidera (Claimant), *pro se*, filed an application requesting reconsideration of this Court's September 6, 2024 memorandum opinion and order quashing as untimely Claimant's petition for review of the August 26, 2022 order of the Unemployment Compensation Board of Review (Board), which affirmed Claimant's ineligibility for unemployment compensation benefits (UC benefits) under Section 402(e) of the Unemployment Compensation Law (the UC Law),[1] 43 P.S. § 802(e).[2] This Court granted reconsideration by order dated November 13, 2024. Upon review, we affirm the order of the Board.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[2] Section 402(e) of the Law provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act[.]" 43 P.S. § 802(e).

# I. Background

Claimant worked part time[3] for Jefferson Cardiology Associates (Employer) as an ultrasound technician from February 2020 until October 14, 2021. Certified Record (C.R.) at 91. Employer required employees to wear a mask while in the presence of patients as a COVID-19 mitigation measure. *Id.* Claimant refused to abide by Employer's face mask policy (the Policy) and would lower her mask in front of patients, claiming that wearing a mask caused her glasses to "fog up." *Id.* at 91-92. Employer informed Claimant of the option to use a face shield, but Claimant insisted that the face shield also "fogged up" her glasses. *Id.* Employer instructed Claimant to comply with the Policy, but Claimant again refused, resulting in her termination on October 14, 2021. *Id.* at 92. On February 19, 2022, Claimant resumed employment at Employer's request. *Id.* at 65 and 92. The same month, Claimant applied for UC benefits, effective October 17, 2021. *Id.* at 3. On March 21, 2022, the Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Benefits, denied Claimant UC benefits on the basis that Claimant's awareness and violation of Employer's reasonable rule constituted willful misconduct under Section 402(e) of the UC Law, 43 P.S. § 802(e). *Id.* at 31.

Claimant appealed the denial to a referee. *See* C.R. at 42-43. On July 19, 2022, a referee for the Board conducted a hearing at which Claimant testified as follows.[4] C.R. at 62. Claimant admitted that she would lower her mask in front of patients, that Employer had instructed her to adhere to its Policy, that she refused to do so, and that Employer terminated Claimant her due to noncompliance with the

---

[3] Claimant worked approximately 25 hours per week. Finding of Fact (F.F.) 1.

[4] Employer did not participate in the hearing. *See* C.R. at 62.

2

Policy.[5]  *Id.* at 65-67.  However, Claimant stated she "[did not] understand what a face shield does."  *Id.* at 66.  Further, according to Claimant, she "was not the only one in the office not wearing a mask," asserting that other employees were also violating the Policy.  *Id.* at 66-67.  Claimant asserted that employees "were allowed to pull [their] masks up and down between patients in the same room[.]"  *Id.* at 66.  Claimant had informed Employer that wearing either a mask or a face shield caused her glasses to "fog," thereby preventing her from performing her job as an ultrasound technician "correctly."  *Id.* at 66.

At some point prior to February 2022, Employer's lead ultrasound technician sent Claimant a text message asking her to return to work.  *Id.* at 67.  Claimant responded that she would not wear a mask upon her return, and the lead ultrasound technician allegedly replied, "you do not have to wear a mask, but sign the paper."  *Id.*  Claimant acknowledged that the "paper" she signed upon resuming employment stated that she "would wear a mask," despite the alleged assurance from the lead ultrasound technician to the contrary.  *See id.* at 67-68.  Since returning to work, Claimant "ha[s] not worn a mask one second," and both her manager and the lead ultrasound technician have witnessed her noncompliance with the Policy.  *Id.* at 68.  Further, "the majority of people at [Employer's] Union[t]own office [allegedly did not] wear masks" even though the Policy was still in effect.  *Id.*  Although "sporadically one of nurses [would] wear a mask," the doctor and the nurse practitioner did not wear masks.  *Id.*

The referee affirmed the denial of UC benefits.  C.R. at 71-73.  The referee stated "that there are methods that can be used to adapt masks to fit [more snugly] over the nose to prevent individuals who wear glasses from having them fog

---

[5] Claimant asserted absent further explanation that the Policy "changed three times during [the COVID[-19] pandemic]."  C.R. at 66.

3

up." C.R. at 72. Further, the referee explained that a Centers for Disease Control and Prevention (CDC) "recommendation or mandate for individuals to wear masks while indoors, particularly inside medical facilities," was still in effect at the time of Claimant's October 2021 termination, though later cancelled by the CDC by the time Employer reinstated Claimant. *Id.* at 73. The referee, therefore, deemed Employer's apparent deviation from the mask policy following Claimant's return to work in February 2022 irrelevant to Claimant's eligibility for UC benefits following her October 2021 termination. *Id.*

Claimant appealed to the Board, which affirmed by decision mailed August 26, 2022. *See* C.R. at 82-84, 91 & 93. The Board found that Claimant was aware of the Policy prior to her termination, that Claimant refused to follow the Policy because wearing either a mask or a face shield "fogged her glasses" and she did not understand the purpose of the face shield, that Employer instructed her to wear a mask, and that her refusal to comply with the Policy resulted in her discharge from employment on October 14, 2021. *Id.* at 91-92. Further, the Board found that Claimant returned to her position with Employer on February 19, 2022 after signing a "paper" accepting a raise in pay and agreeing to wear a mask. *Id.* at 92. The Board reasoned that Claimant's admission at the hearing that she was aware of and refused to follow the Policy satisfied Employer's burden to establish a *prima facie* case of willful misconduct. C.R. at 92. Thus, the Board determined that Claimant bore the burden to prove good cause for the violation or to demonstrate that the Policy was unreasonable as applied to her. *Id.* at 93. Concluding that Claimant failed to meet this burden, the Board explained that wearing a mask did not prevent Claimant from performing her job and, further, that "[C]laimant's minor inconvenience with her glasses fogging [did] not confer a right to simply disregard [] [E]mployer's rules or

4

directives[.]" *Id.* Moreover, the Board deemed the Policy a reasonable protective measure for Employer's patients and workforce during the COVID-19 pandemic and highlighted Employer's provision of an alternative in the form of a face shield. *Id.*

The Board interpreted Claimant's allegation at the July 19, 2022 hearing that other employees did not wear a mask as asserting "inconsistent enforcement" of the Policy. C.R. at 93. The Board determined, however, that Claimant failed to prove inconsistent enforcement, as "[C]laimant neither told [] [E]mployer that other employees were not wearing masks, nor was she aware if [] [E]mployer knew her co-workers were not wearing masks." *Id.* Further, the Board reasoned that although "[E]mployer may have later relaxed the masking requirements," this subsequent laxity "[did] not excuse [] [C]laimant's deliberate violation of the rule or [P]olicy when she was discharged." *Id.* The Board, therefore, concluded that Claimant's willful misconduct in violating the Policy rendered her ineligible for UC benefits from claim week ending October 17, 2021 through claim week ending February 19, 2022,[6] under Section 402(e) of the UC Law, 43 P.S. § 802(e). *Id.*

On September 7, 2022, Claimant filed a letter with this Court indicating her intent to appeal the Board's August 26, 2022 order. *See Pro Se* Letter, 9/7/22. By notice dated November 17, 2022, the Prothonotary of this Court instructed

---

[6] For purposes of filing a claim for UC benefits in Pennsylvania, "[a] 'week' is a calendar week beginning on Sunday and ending the following Saturday. The date of the Saturday is called the claim week ending date[.]" Pennsylvania Unemployment Compensation Handbook, *available at* https://www.apfa.org/wp-content/uploads/2020/04/PHL-Pennsylvania-Unemployment-Compensation-Handbook.pdf (last visited December 17, 2024).

5

Claimant to complete and return an enclosed petition for review form[7] within 30 days in order to preserve September 7, 2022 as the filing date of her appeal. *See* Notice, 11/17/22. By letter dated January 19, 2023, the Prothonotary advised Claimant that no petition for review had been received and that the Court would take no further action in the matter. Letter, 1/19/23. On January 23, 2023, Claimant filed an ancillary petition for review, stating in an attachment thereto that she initially mailed the petition to perfect her appeal within the requisite timeframe, but that the Court "refused the packet on December 8, 2022[.]"[8] *See* Ancillary Pet. for Rev., 1/23/23 at 13 (Attachment, E-mail to Court Prothonotary, sent January 23, 2023); *see also* Pa.R.A.P. 1514(a)(2) (providing that a petition for review "shall be deemed received by the prothonotary for the purposes of Pa.R.A.P. 121(a)[9] on the date

---

[7] The Prothonotary also instructed Claimant to submit a certificate of compliance with the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania, a signed proof of service, a copy of the agency decision that Claimant sought to appeal, and a copy of the November 17, 2022 notice. *See* Notice, 11/17/22.

[8] Claimant provided documentation allegedly evidencing this Court's December 8, 2022 refusal of the ancillary petition for review mailed on December 6, 2022, although the attachment indicating mail was refused on that date contains no particulars regarding the sender, the nature of the mailing, or the intended recipient. *See* Ancillary Pet. for Rev., 1/23/23 at 12.

[9] Rule 121(a) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part:

> Papers required or permitted to be filed in an appellate court shall be filed with the prothonotary. Filing may be accomplished by mail addressed to the prothonotary, but except as otherwise provided by these rules, filing shall not be timely unless the papers are received by the prothonotary within the time fixed for filing.

Pa.R.A.P. 121(a). "A petition for review of a quasijudicial order . . . shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order." Pa.R.A.P. 1512(a)(1). Here, Claimant filed her *pro se* letter indicating her intent to appeal on September 7, 2022, within 30 days of the Board's August 26, 2022 order. By notice dated November 17, 2022, the Prothonotary instructed Claimant to perfect her appeal within 30 days in order to preserve her September 7, 2022 filing date. Notice, 11/17/22.

deposited in the United States Mail," provided the petitioner satisfies certain criteria).[10]    On March 15, 2023, this Court issued a defect correction notice instructing Claimant to submit a complete copy of the Board's decision within 14 days.  *See* Defect Correction Notice, 3/15/23.  Claimant complied with the defect correction notice within the requisite timeframe.  *See* Response to Defect Correction Notice, 3/27/23.

On September 6, 2024, this Court issued a memorandum opinion and order quashing as untimely the *pro se* petition for review filed by Claimant on the basis of Claimant's apparent failure to perfect her appeal within 30 days of this Court's November 17, 2022 notice.  *See Guidera v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1543 C.D. 2022, filed Sept. 6, 2024), slip op. at 5-7.  On September 19, 2024, Claimant filed an application for reconsideration, asserting that mail receipts attached to her January 23, 2023 ancillary petition for review evidence the timeliness of her appeal.

## II. Application for Reconsideration

Pennsylvania Rule of Appellate Procedure (Appellate Rule) 1514 provides, in relevant part:

**(a) Filing with the Prothonotary.**

(1) The petition for review, with proof of the service that is required by subdivision (c), shall be filed with the prothonotary of the appellate court in person or by first

---

[10] Claimant's attachment to the ancillary petition for review of an e-mail sent to this Court's Prothonotary on January 23, 2023 indicates that the filing constituted a resubmission of the initial ancillary petition deposited in the mail in early December 2022.  *See* Ancillary Pet. for Rev., 1/23/23 at 13.

7

class, express, or priority United States Postal Service mail.[11]

> (2) *If the petition for review is filed by first class, express, or priority United States Postal Service mail, the petition shall be deemed received by the prothonotary for the purposes of Pa.R.A.P. 121(a) on the date deposited in the United States mail, as shown on a United States Postal Service Form 3817 Certificate of Mailing, Form 3800 Receipt for Certified Mail, Form 3806 Receipt for Registered Mail, or other similar United States Postal Service form from which the date of deposit can be verified.* The certificate of mailing or other similar Postal Service form from which the date of deposit can be verified shall be cancelled by the Postal Service and shall show the docket number of the matter in the government unit, and shall be either enclosed with the petition or separately mailed to the prothonotary.

Pa.R.A.P. 1514(a)(1) & (2) (emphasis added).

A search of this Court's internal records conducted following receipt of Claimant's application for reconsideration has revealed that the Court received Claimant's initial submission of the ancillary petition for review on February 16, 2023, well past the deadline by which to perfect her appeal.[12] However, the envelope for this mailing contained in the Court's internal file indicates that Claimant originally sent the ancillary petition for review by Certified Mail more than two-and-a-half months prior, on December 6, 2022. The Court did not update the docket to

---

[11] Claimant filed her ancillary petition for review via Certified Mail. Priority Mail and First-Class Mail are eligible for delivery as Certified Mail. *See Certified Mail – The Basics*, USPS.COM, *available at* https://faq.usps.com/s/article/Certified-Mail-The-Basics (last visited December 17, 2024).

[12] Thus, contrary to Claimant's supposition, the Court accepted the initial mailing, albeit several weeks after receipt of Claimant's resubmission of the ancillary petition for review on January 23, 2023.

reflect receipt of the original ancillary petition for review deposited in the mail by Claimant on December 6, 2022.

Further, attachments to Claimant's January 23, 2023 resubmission of the ancillary petition for review include copies of "PS Forms 3800,"[13] or Certified Mail receipts, addressed to Claimant's employer, the Board, the Pennsylvania Attorney General, and this Court, all of which are date stamped December 6, 2022. *See* Ancillary Pet. for Rev., 1/23/23 at 9.[14] Notably, the "PS Form 3800" supplied by Claimant in her January 23, 2023 resubmission evidencing that she mailed a filing to this Court on December 6, 2022 bears neither cancellation marks nor the docket number of the matter in the government unit, as required by Appellate Rule 1514(a)(2). *See* Ancillary Pet. for Rev., 1/23/23 at 9; Pa.R.A.P. 1514(a)(2). Nevertheless, as explained by our Supreme Court:

> We do not condone untimeliness. In cases such as this, however, where the record shows clearly and without dispute that a petition for review was timely mailed prior to the 30-day jurisdictional deadline, where counsel for the appellant apprises the court of the record in that respect

---

[13] A "PS Form 3800" indicates the date on which a mailing was deposited in the mail via the United States Postal Service by means of Certified Mail. *See Getting Evidence They Got It – Certified Mail*, United States Postal Service, *available at* https://about.usps.com/publications/pub370/pub370_v10_revision_012016_tech_004.htm (last visited December 17, 2024).

[14] Claimant also attached three "PS Forms 3811" indicating receipt of the mailing by her employer, the Board and the Pennsylvania Attorney General. *See* Ancillary Pet. for Rev., 1/23/23 at 10; *see also Return Receipt – The Basics*, USPS.com, *available at* https://faq.usps.com/s/article/Return-Receipt-The-Basics (last visited December 17, 2024) (explaining that a "PS Form 3811" is a return receipt service used with various forms of mail offered by the United States Postal Service, including Certified Mail). Claimant could not have attached to her January 2023 resubmission of the ancillary petition for review a "PS Form 3811" evidencing receipt by this Court, as that mailing did not arrive until February 16, 2023.

> *and timeliness can be determined from an examination of the records of the court*, a fair and just interpretation of our rules makes a dismissal improper.
>
> We need not have drafted our rules to equate the date of mailing with the date of filing. Nevertheless, our rules do allow filing by mail, and our courts cannot consistently judge a petition as timely by the date of its mailing and at the same time reject that petition when the record is sufficient to show a timely mailing.

*Miller v. Unemployment Comp. Bd. of Rev.*, 476 A.2d 364, 367 (Pa. 1984) (emphasis added) (citing Pa.R.A.P. 1514) (reversing quashal by this Court and deeming timely a petition for review sent by certified mail, return receipt requested, prior to the lapse of the appeal window, but received and docketed by the Court Prothonotary outside of that time period, where it was "possible to determine the timeliness of [the] filing from either the face of the document *or from the internal records of the court*") (emphasis added). Thus, in light of the Court's discovery of its possession of the original December 6, 2022 mailing and the liberal construction accorded procedural rules, we granted Claimant's application for reconsideration on the basis that Claimant timely deposited her ancillary petition for review in the mail. *See* Pa.R.A.P. 1514(a)(2) (providing that a "petition shall be deemed received by the prothonotary for the purposes of Pa.R.A.P. 121(a) on the date deposited in the United States mail, "as shown on a . . . Form 3800 Receipt for Certified Mail . . . or other similar United States Postal Service form from which the date of deposit can be verified"); *Miller*, 476 A.2d at 366 (citing Pa.R.A.P. 105(a); Pa.R.Civ.P. 126) (holding that rules governing the timeliness of court filings "are to be 'liberally construed,'" stressing that the Court "[has] long refused to give overly technical, restrictive readings to procedural rules, particularly when remedial statutes such as the [UC Law] are involved").

### III. Willful Misconduct

### A. Issues

We now turn to the merits of Claimant's appeal. Before this Court,[15] Claimant argues that the Board erred in concluding that her failure to comply with Employer's Policy constituted willful misconduct rendering her ineligible for UC benefits during her four-month period of unemployment following her October 14, 2021 termination. Claimant's Br. at 10. Claimant acknowledges that "[t]he mask mandate [is] still in place," but asserts that she "was verbally told[16] by [the lead ultrasound technician]" before resuming work on February 19, 2022 that she "did not have to wear a mask" and, further, that she "ha[s] never worn one." *Id.* Claimant maintains that "if [Employer] asked [her] to come back to work with the same mask mandate in place," then "there was no reason to fire [her] in the first place." *Id.*

The Board counters that Claimant admitted at the July 2022 hearing to deliberately violating the Policy, that "Employer's relaxation of its [P]olicy *four months after Claimant's separation* is irrelevant to . . . whether Claimant committed willful misconduct *at the time of her separation*," and that Claimant failed to establish good cause for her misconduct. *See id.* at 11 & 13-14 (citing C.R. at 66);

---

[15] "Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Rev.*, 83 A.3d 484, 486 (Pa. Cmwlth. 2014) (citing Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704).

[16] We note Claimant's testimony that the lead ultrasound technician informed her *via text message* that she would "not have to wear a mask" upon her return to work, but that she needed to "sign the paper." C.R. at 67.

*see also id.* at 16 n.6 (citing *Gingrich v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 236 C.D. 2022, filed Jan. 9, 2023)).[17]

## B. Discussion

Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for UC benefits, the employer bears the burden of proving that the employee engaged in willful misconduct connected with her work. *See* Section 402(e) of the UC Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) *deliberate violation of rules*; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or[] (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (emphasis added) (citation omitted).

"To meet its burden of proof in establishing willful misconduct in the violation of a work rule, an employer must establish the existence of the rule, its reasonableness, [] that the employee was aware of its existence," and "that the employee actually violated the rule or policy in question." *Williams v.*

---

[17] Unreported memorandum opinions of this Court issued after January 15, 2008 may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures 210 Pa. Code § 69.414(a).

*Unemployment Comp. Bd. of Rev.*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007) (citations omitted). "[A] determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation omitted).

"Once the employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to prove that [her] actions were justified or reasonable under the circumstances." *Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006) (citation omitted). "An employee's refusal, without good cause, to follow an employer's reasonable directive may . . . constitute willful misconduct." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019). Further, "[w]here an employer . . . admittedly tolerates violations of its rule or policy, an employer may fail to establish willful misconduct based upon a violation of that rule or policy." *Id.* (citation omitted).

Here, Claimant conceded at the July 19, 2022 hearing, and the Board found as facts, that she was aware of Employer's Policy prior to her termination, that she refused to follow the Policy because wearing either a mask or a face shield "fogged her glasses" and she did not understand the purpose of the face shield, that Employer instructed her to wear a mask, and that her refusal to comply with the Policy resulted in her October 2021 termination. *See* C.R. at 65-67 & 91-92; *Williams*, 926 A.2d at 571. These findings are binding on appeal. *See Gordon Terminal*, 211 A.3d at 899 (citation omitted) (holding that where a party "does not dispute any of the factual findings, . . . those findings of fact are binding on appeal");

13

*see also Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977) (citations omitted) (explaining that "[i]t is [] axiomatic in an unemployment compensation case[] that the findings of fact made by the Board . . . are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings"); *Elser v. Unemployment Comp. Bd. of Rev.*, 967 A.2d 1064, 1070 (Pa. Cmwlth. 2009) (citation omitted) (stating that as the Board is the ultimate factfinder in unemployment compensation cases, its findings of fact are conclusive on appeal). Further, Claimant does not challenge the Board's determination that the Policy was reasonable. *See* C.R. at 93. Thus, the deciding question is whether Claimant's "actions were justified or reasonable under the circumstances." *Downey*, 913 A.2d at 353 (citation omitted).

Claimant's sole argument on appeal is that the Board erred in affirming her ineligibility for UC benefits following her October 2021 termination when the lead ultrasound technician allegedly assured Claimant prior to her February 2022 return to work that she "did not have to wear a mask," such that "there was no reason to fire [her] in the first place."[18] Claimant's Br. at 10. However, although Claimant asserts that she "ha[s] never worn [a mask]," *id.*, she does not specifically allege that Employer "tolerate[d] violations of its rule or policy" prior to her October 2021 separation from employment, *Gordon Terminal Serv. Co.*, 211 A.3d at 898. We, therefore, agree with the Board that Claimant failed to prove inconsistent

---

[18] In *Gingrich*, this Court held that a pharmacist's violation of his employer's COVID-19 face mask policy constituted willful misconduct precluding eligibility for UC benefits, where the pharmacist failed to communicate to the employer that the mask allegedly caused his glasses to "fog up" while reading prescriptions and had received a final warning regarding his noncompliance with the policy. *See Gingrich*, slip op. at 1-8. Here, Claimant does not assert on appeal that the alleged "fogging" of her glasses caused by wearing a face mask or face shield constituted good cause to violate the Policy. *See* Claimant's Br. at 7 & 10.

enforcement of the Policy, where Claimant did not "[tell] [E]mployer that other employees were not wearing masks" and she was not "aware if [] [E]mployer knew her co-workers were not wearing masks." C.R. at 93; *see also Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (holding that "the prevailing party below[] is entitled to the benefit of all reasonable inferences drawn from the evidence"); *cf. Gordon Terminal Serv. Co.*, 211 A.3d at 899 (quotation marks omitted) (holding that the "[e]mployer did not establish the existence of a rule that could support a finding of willful misconduct," where the Board found that it was "common practice" for employees to violate the employer's written policy prohibiting the use of cell phones without special approval and the "[e]mployer's own witness admitted that other employees used cell phones in the work place without being discharged," thus revealing the employer's "inconsistent enforcement" of the policy); *Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532, 538-39 (Pa. Cmwlth. 2016) ("conclud[ing] that [the] [c]laimant's actions did not amount to willful misconduct under Section 402(e) of the [UC] Law," 43 P.S. § 802(e), where the "[e]mployer acknowledged that it tolerated employees' violation of the computer/internet policy so long as their use was not excessive . . . and [the c]laimant credibly testified that she believed her minimal usage was permissible under the policy *as [the e]mployer enforced it*") (emphasis added); *Penn Photomounts, Inc. v. Unemployment Comp. Bd. of Rev.*, 417 A.2d 1311, 1314-15 (Pa. Cmwlth. 1980) (affirming the claimant's eligibility for UC benefits notwithstanding her violation of the employer's formal policy for reporting absences, where the "[e]mployer [] tolerated a less formal reporting procedure"). Further, we agree with the Board that any alleged relaxation of the Policy by Employer following Claimant's February 19, 2022 return to work "[did] not excuse

15

[her] deliberate violation of the [P]olicy *when she was discharged*" the previous autumn. C.R. at 93 (emphasis added). Regardless, Claimant acknowledged at the July 19, 2022 hearing, and the Board found as a fact, that the "paper" she signed upon resuming employment stated that she "would wear a mask." C.R. at 67-68; *see also id.* at 92.[19]

Accordingly, the Board did not err in determining that Claimant's violation of Employer's Policy constituted willful misconduct precluding her eligibility for UC benefits under Section 402(e) of the UC Law, 43 P.S. § 802(e).

## IV. Conclusion

For the foregoing reasons, we affirm the August 26, 2022 order of the Board.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[19] We note that the legal argument in Claimant's appellate brief is devoid of any citation to supporting legal authority or meaningful discussion. *See* Claimant's Br. at 10. Although we address the merits of Claimant's appeal because we are able to provide meaningful review in this specific case, we reiterate our prior "caution" to claimants that the failure to support a legal argument with "such discussion and citation of authorities as are deemed pertinent" in contravention of Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure "may result in waiver." *Bowen v. Unemployment Comp. Bd. of Rev.*, 311 A.3d 641, 646 n.6 (Pa. Cmwlth. 2024) (citing Pa.R.A.P. 2119(a)); *see also Tewell v. Unemployment Comp. Bd. of Rev.*, 279 A.3d 644, 655 (Pa. Cmwlth. 2022) (citing Pa.R.A.P. 2119(a)) ("finding that [the c]laimant waived [the] issues," where "beyond simply raising [] questions or repeating them in his brief to this Court, [the c]laimant failed to develop or argue these issues in his brief"); *Torres v. Commonwealth*, 228 A.3d 304, 309 (Pa. Cmwlth. 2020) (citing Pa.R.A.P. 2119(a)) (citation omitted) (explaining that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter"); *Browne v. Dep't of Transp.*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) (stating that "[a]t the appellate level, a party's failure to include analysis and relevant authority results in waiver").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Regina S. Guidera,                        :
                        Petitioner        :
                                          :
            v.                            :
                                          :
Unemployment Compensation                 :
Board of Review,                          :    No. 1543 C.D. 2022
                        Respondent        :

# **O R D E R**

AND NOW, this 18th day of December 2024, the August 26, 2022, order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge