# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vita M. Forgione,                               :
                          Petitioner            :
                                                :
              v.                                :    No. 995 C.D. 2018
                                                :    Submitted: November 30, 2018
Unemployment Compensation                       :
Board of Review,                                :
                          Respondent            :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                         **FILED:  March 14, 2019**


Vita M. Forgione (Claimant), pro se, petitions for review of a June 28, 2018
Order of the Unemployment Compensation Board of Review (Board) affirming a
Referee's decision finding Claimant ineligible for unemployment compensation
(UC) benefits under Section 402(e) of UC Law,[1] 43 P.S. § 802(e).  The Board
affirmed, but on the basis that Claimant is ineligible for benefits under Section 3 of
UC Law, 43 P.S. § 752, because she engaged in non-work-related conduct that was
inconsistent with acceptable standards of behavior and affected her ability to
perform the duties of her employment.  Discerning no error, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 802(e) (providing that a claimant will be ineligible for UC benefits for any week in which
"unemployment is due to discharge or temporary suspension from work for willful misconduct"
in connection with the claimant's work).

## I. Factual History

Claimant was employed as a paraprofessional by the Scranton School District (Employer) from August 2004 to May 2017. Employer suspended Claimant without pay on May 11, 2017, after learning that Claimant had been arrested on charges relating to Claimant's son's alleged "slashing [of] his girlfriend's two-year-old daughter." (Board Opinion (Op), Finding of Fact (Board FOF) ¶ 3.) Specifically, Claimant was charged with: failing to report or refer suspected child abuse in violation of Section 6319 of the Child Protective Services Law, 23 Pa. C.S. § 6319; tampering with or fabricating physical evidence in violation of Section 4910 of the Crimes Code, 18 Pa. C.S. § 4910; and unsworn falsification to authorities in violation of Section 4904 of the Crimes Code, 18 Pa. C.S. § 4904. During her suspension, Claimant sent a letter to Employer on May 24, 2017, stating that she would retire at the end of the school year, effective June 30, 2017.

On May 15, 2017, Claimant filed an internet claim for UC benefits. Employer submitted a response, indicating that Claimant was "currently suspended without pay due to arrest." (Certified Record (C.R.) Item No. 5.) The UC Service Center found that Claimant was not ineligible under Section 402(e), beginning with the waiting week ending on May 20, 2017. Employer appealed, contesting Claimant's eligibility under Section 3 and subsections (b) and (e) of Section 402, 43 P.S. §§ 752, 802(b) (related to voluntarily leaving one's employment), (e). A hearing before the Referee was scheduled for July 18, 2017, and the hearing notice reflected that those sections were being considered in the appeal.

2

*a. First Referee Hearing and Decision*

At the hearing, Employer appeared represented by a tax representative, who stated that, ultimately, Claimant was not discharged but had voluntarily resigned. (Referee Hearing, July 18, 2017, Hr'g Tr. (July 2017 Hr'g Tr.) at 4, 8.) Employer's solicitor (Solicitor) testified, as a fact witness, explaining that Claimant was first suspended because "[s]he had been arrested . . . for covering up child slashing." (*Id.* at 5.) Employer then entered as exhibits the criminal docket in Claimant's case and, over a hearsay objection, a newspaper article detailing Claimant's alleged actions. Solicitor stated that it was because of the alleged child abuse cover-up that Employer had to take action to suspend Claimant "in the best interest and safety of [the] children." (*Id.* at 6-8.) Solicitor explained that Employer was required to discharge Claimant under Section 111 of the Public School Code of 1949 (School Code)[2] because of the nature of the charges against Claimant. Thus, Employer advised Claimant in the letter suspending her without pay it would be scheduling a hearing to determine her employment status. (*Id.* at 5; Employer's Ex. 1.) However, because

_____

[2] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of July 1, 1985, P.L. 129, 24 P.S. § 1-111. The subsection to which Solicitor referred provides:

> (e) No person subject to this act shall be employed or remain employed in a public or private school, intermediate unit or area vocational-technical school where a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of any of the following offenses:

> (1) An offense under one or more of the following provisions of Title 18 of the Pennsylvania Consolidated Statutes:
>    . . .
>    Section 4304 (relating to endangering welfare of children).

24 P.S. § 1-111(e)(1). Solicitor testified that Claimant completed this form and marked that she had been arrested for an offense enumerated under 24 P.S. § 1-111(e). (July 2017 Hr'g Tr. at 16; Employer's Ex. 7.)

3

it received Claimant's May 24, 2017 retirement letter before a hearing could be scheduled, Solicitor testified that Employer considered Claimant's retirement to be a resignation in lieu of discharge. (*Id.* at 9-12.)

Claimant testified on her own behalf as follows. As to her conduct relating to the criminal charges, Claimant found one of her son's tools while cleaning the house and put it in a drawer to keep it away from her son's girlfriend's child. (*Id.* at 19-20.) That tool was allegedly the one used by her son in the slashing incident, but Claimant was unaware of the incident and she did not suspect child abuse at the time. (*Id.* at 19.) Claimant was off-duty at the time, the alleged child abuse did not relate to any students of Employer, and she had pled not guilty to the charges. (*Id.* at 17, 19.) With regard to her separation from employment, Claimant stated that she was suspended and then she resigned, but did not send the retirement letter until an error regarding Employer's contributions to her retirement account had been resolved. (*Id.* at 17, 20-21.) Nonetheless, Claimant's counsel argued that Claimant did not resign, but retired at the end of the school year and remained eligible for benefits. (*Id.* at 22-23.)

In a decision mailed July 20, 2017, the Referee concluded that Claimant was ineligible for benefits under Section 402(e) because she acted in a manner that was "inimical to the [E]mployer's best interest" and, therefore, had engaged in willful misconduct. (Referee Decision at 2.) The Referee found that Claimant was suspended without pay effective May 11, 2017, and that, after she advised Employer of her intent to retire, Employer took no further action on Claimant's suspension/termination. (Referee Decision, Referee FOF ¶¶ 1,[3] 4-6.) The Referee

---

[3] The first two numbered paragraphs in the Referee's Findings of Fact are labeled with a 1. The finding of fact referenced in this citation is the second paragraph numbered 1.

concluded that Employer met its burden of proving that Claimant was discharged for willful misconduct in connection with her work.

Claimant timely appealed the Referee's decision, arguing there was no relationship between the crimes with which she was charged and her employment, and she had no legal duty to report any suspected abuse because the incident did not occur on Employer's property or during the course of Claimant's work. In response, the Board issued a remand memo, requesting the Referee to schedule another hearing to receive testimony as to the disposition of Claimant's criminal case and Claimant's eligibility under Section 3 of the UC Law. In addition, the Board requested testimony relating to whether: (1) Claimant was in a position of trust; and (2) the outcome of the criminal case affected Claimant's ability to do her job. (C.R. Item No. 16.)

*b. Referee Remand Hearing*

The Referee conducted the remand hearing on May 29, 2018. Claimant testified that she pled guilty in April 2018 to tampering with or fabricating physical evidence, 18 Pa. C.S. § 4910, and the other charges were withdrawn. (Referee Remand Hearing, May 29, 2018, Hr'g Tr. (Remand Hr'g Tr.) at 6-7.) Claimant reiterated that the only conduct in question as it related to the guilty plea was her action in putting her son's tool in a drawer while she was cleaning up. (*Id.* at 8.) Thus, Claimant also explained that the conduct underlying the criminal charges was not related to her employment or to children who attended Employer's school district. (*Id.* at 6.)

In response, Employer's human resources director (HR Director) testified that Claimant was in a position of trust as a paraprofessional, as her duties included

5

supervising students, including transitional students, and caring for students' health needs. (*Id.* at 9.) Given these duties, HR Director stated that the disposition of Claimant's criminal charges affected her ability to perform her job because the crime related to the injury of a child and her covering up that crime. (*Id.* at 10.) HR Director acknowledged that Claimant pleaded guilty to tampering with evidence and that the underlying incident for the charges occurred at Claimant's home and not in connection with Claimant's employment. (*Id.* at 11.) Finally, HR Director testified that Employer paid Claimant through June 29, 2017, the date of her retirement. (*Id.* at 10.) Solicitor testified to the same, emphasizing that Employer took no further action regarding Claimant's suspension once she declared her intent to retire, and paid her through the end of the school year, June 29, 2017, at which time she received her retirement money.[4] (*Id.* at 12.)

### c. *Board's Order*

Following the remand hearing, the Board issued its Order affirming the Referee's decision, although finding Claimant ineligible under Section 3 rather than Section 402(e). The Board made the following findings of fact:

> 1. The [C]laimant was last employed as a paraprofessional by [Employer] from August 2004, and her last day of work was May 10, 2017.
>
> 2. The [C]laimant's job was in a position of trust, as she was responsible for supervising students, transitioning students, and the health needs of the students.
>
> 3. On May 11, 2017, the [C]laimant was suspended without pay because the [C]laimant was arrested for a felony of failing to report or

---

[4] Employer entered as an exhibit a check log showing Claimant was paid through the date of her retirement, with two days of docked pay.

refer, misdemeanor of tampering with/fabricat[ing] physical evidence[,] and unsworn falsification to authorities related to the [C]laimant's son allegedly slashing his girlfriend's two-year-old daughter.

4. The underlying alleged criminal activity purportedly occurred in April 2017, and did not occur on the [E]mployer's property.

5. The [C]laimant was charged with Failure to Report or Refer (23 [Pa. C.S.] § 6319, Tamper With/Fabricate Physical Evidence (18 [Pa. C.S.] § 4910), and Unsworn Falsification to Authorities (18 [Pa. C.S.] § 4904).

6. On May 24, 2017, the [C]laimant sent a letter to the [E]mployer expressing her desire to retire at the end of the school year on June 30, 2017.

7. Due to the [C]laimant's voluntary retirement, the [E]mployer chose to finish paying the [C]laimant out for the school year in lieu of proceeding with a *Loudermill*[5] hearing and the further administrative process beyond the [C]laimant's suspension without pay.

8. The [E]mployer paid the [C]laimant through until June 29, 2017, after which the [C]laimant received her retirement monies.

9. The [C]laimant was not terminated; however, the [E]mployer would have terminated the [C]laimant if she had not retired in accordance with applicable statutes.

10. The [C]laimant pled guilty to Tamper With/Fabricate Physical Evidence under 18 [Pa. C.S.] § 4910.

(Board FOF ¶¶ 1-10.) The Board acknowledged that Solicitor had questioned the necessity of the remand hearing because Employer paid Claimant to the end of the school year, but the Board concluded that Claimant's eligibility for benefits required

---

[5] "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 . . . (1985)." *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

determining the nature of Claimant's separation from her employment on her last day of work. (Board Op. at 2.) Citing the testimonial evidence, the suspension letter dated May 18, 2017, and a May 26, 2017 Notice of Application sent to the UC Service Center in which Employer indicated Claimant was suspended without pay due to her arrest, the Board held that, because Employer would have terminated Claimant had she not retired, Claimant's retirement was in lieu of termination and would be treated as an involuntary discharge. (*Id.* at 2-3.)

Recognizing that the events leading to Claimant's discharge did not occur in relation to her work, the Board applied a two-part test developed by this Court in *Unemployment Compensation Board of Review v. Derk*, 353 A.2d 915, 917 (Pa. Cmwlth. 1976), and adopted by the Supreme Court in *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1154 (Pa. 1993), to determine Claimant's eligibility under Section 3. The Board determined that Employer met its burden under *Derk* because: (1) Claimant's guilty plea was conclusive evidence that her conduct was contrary to acceptable standards of behavior; and (2) the conduct directly affected Claimant's ability to perform her job, as she was in a position of trust and responsible for students, and the nature of the offense "show[ed] untrustworthiness and dishonesty." (Board Op. at 3.) Thus, the Board concluded that Claimant was ineligible under Section 3. Claimant filed an application for reconsideration, which was deemed denied after the Board did not act within 30 days. Claimant timely petitioned this Court for review.[6]

---

[6] Our "review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Palladino v. Unemployment Comp. Bd. of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

## II. Discussion

Before this Court, Claimant raises two main contentions. First, Claimant challenges various aspects of the Board's evidentiary determinations and factual findings. Second, Claimant questions whether Employer met its burden of proof under Section 3. We will address these in turn.

### a. Claimant's Evidentiary Challenges

Claimant asserts various challenges related to the evidence relied upon by the Board and its subsequent factual findings. Claimant argues that the Board erred in relying upon Employer's evidence to make its findings. Claimant also asserts that she did not voluntarily retire, but rather was terminated "without just cause." (Claimant's Brief (Br.) at 9.) As part of this argument, Claimant appears to assert that there is not substantial evidence to support the Board's finding that Employer would have terminated Claimant had she not declared her intent to retire. The Board responds that its findings are supported by substantial evidence and are conclusive because Claimant has not challenged any specific finding of fact.

In reviewing Claimant's evidentiary challenges, we are guided by the following well-settled principles. The Board is the ultimate finder of fact and makes all credibility determinations, and such determinations are not subject to review on appeal. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1389 (Pa. 1985). The Board's findings of fact are conclusive upon review if they are supported by substantial evidence, "even if there is contrary evidence of record." *Morgan v. Unemployment Comp. Bd. of Review*, 108 A.3d 181, 185 (Pa. Cmwlth. 2015). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Id.* (quoting *W. & S. Life Ins. Co. v.*

*Unemployment Comp. Bd. of Review*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006)). Moreover, "[f]indings of fact, which are not specifically challenged, are conclusive upon review." *Crabbe v. Unemployment Comp. Bd. of Review*, 179 A.3d 1183, 1188 n.9 (Pa. Cmwlth. 2018). In determining if there is substantial evidence to support the findings, we review "the testimony in the light most favorable to the prevailing party below, giving that party the benefit of any inference which can be drawn logically and reasonably from the evidence." *Dickey v. Unemployment Comp. Bd. of Review*, 466 A.2d 1106, 1107 (Pa. Cmwlth. 1983).

Claimant first asserts that she "is appealing because the [Board's] decision was based on facts provided by [E]mployer." (Claimant's Br. at 9.) However, that the Board relied upon Employer's evidence to make its findings of fact reflects a credibility determination by the Board as the ultimate fact finder. *See Peak*, 501 A.2d at 1389. Those determinations, which are supported by substantial evidence, are not reviewable on appeal. *Id.*

Next, Claimant contends that she did not voluntarily retire. This argument appears to challenge the Board's characterization of her separation from employment and her role in that separation. Before this Court, Claimant contends that she did not voluntarily retire, as found by the Board in finding of fact 7, but was terminated without just cause. Thus, Claimant maintains, the Board's finding that she acted voluntarily was improper. However, the Board determined that Claimant was discharged, i.e., that her separation was **not voluntary**, because "[C]laimant's retirement was in lieu of termination." (Board Op. at 3.) Therefore, regardless of how the Board characterized Claimant's role in her separation, the Board made the finding that Claimant sought – that her separation was not voluntary. Moreover, her argument that her discharge was without just cause is misplaced, as it challenges

10

Employer's ability to discharge her in the first instance. Our review of the Board's Order relates only to the eligibility for UC benefits, not to Employer's authority to discharge Claimant. *See Gillins*, 633 A.2d at 1155 (acknowledging that "the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the [Commonwealth] is justified in reinforcing that decision by denying benefits under [the UC Law] for the complained of conduct") (citation omitted).

Finally, Claimant challenges the Board's finding that Employer would have terminated Claimant but for her decision to retire. At the first hearing before the Referee, Solicitor testified that Employer was obligated by the School Code to terminate Claimant after her arrest for these specific charges. (July 2017 Hr'g Tr. at 9-10.) Solicitor reiterated this at the remand hearing, stating that Employer chose not to act on the suspension without pay or proceed through a pre-termination *Loudermill* hearing once Claimant made the decision to retire. (Remand Hr'g Tr. at 12.) Thus, this finding is supported by substantial evidence.

### b. Claimant's assertion that Employer did not meet its burden of proof under Section 3

Claimant argues that Employer did not meet its burden of proof under Section 3, primarily because the circumstances underlying her arrest were unrelated to her employment or Employer's students. Further, Claimant contends that her suspension was premised on her arrest for failure to report suspected child abuse, a charge that was ultimately withdrawn. Last, Claimant asserts that her conviction for tampering with evidence does not directly affect her abilities to perform her duties.

The Board acknowledges that the incident giving rise to Claimant's arrest did not occur at work and did not involve any of Employer's students, but argues that

this is not relevant to a determination of ineligibility under Section 3. The Board asserts that Claimant's guilty plea to tampering with evidence supports a determination that Claimant's conduct was inconsistent with acceptable standards of behavior. Further, the Board contends, Claimant's guilty plea and the conduct underlying that guilty plea affect her ability to perform her job, which involves a special position of trust, as they arose from an incident involving alleged child abuse and the cover-up of that incident.

We begin with the relevant section of UC Law. Section 3 is a declaration of public policy and states, in relevant part:

> The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of **persons unemployed through no fault of their own**.

43 P.S. § 752 (emphasis added). Section 3 operates to disqualify claimants from receiving benefits "for non-work-related misconduct which is inconsistent with acceptable standards of behavior." *Palladino v. Unemployment Comp. Bd. of Review*, 81 A.3d 1096, 1100 (Pa. Cmwlth. 2013) (emphasis and citation omitted). Under such circumstances, it cannot be said that a claimant's unemployment was "through no fault of their own." 43 P.S. § 752. To establish ineligibility under Section 3, the employer must present evidence showing: (1) "conduct of the claimant leading to the criminal arrest which is inconsistent with acceptable standards of behavior"; and (2) that the conduct "[d]irectly reflects upon [the claimant's] ability to perform [the claimant's] assigned duties." *Derk*, 353 A.2d at 917. While proof of a conviction is not required, *id.*, when such proof is presented,

12

it is conclusive of the first prong of the two-part test. *Hawkins v. Unemployment Comp. Bd. of Review*, 695 A.2d 963, 966 (Pa. Cmwlth. 1997). In determining whether the second prong is met, we consider:

> (1) the nature of [c]laimant's assigned duties; (2) the specific nature of the offense committed by [c]laimant; (3) whether [c]laimant's job required any special degree of trust on the part of [e]mployer . . . ; and (4) any other circumstances which may particularly affect [c]laimant's ability to do [claimant's] job, including whether the crime occurred on or off [e]mployer's premises, and whether or not it involved any of [e]mployer's other workers or clients.

*Robinson v. Unemployment Comp. Bd. of Review*, 546 A.2d 750, 754 (Pa. Cmwlth. 1988). While no factor is dispositive, many Section 3 decisions focus upon whether a claimant has a position of trust, as "certain occupations, by reason of their sensitive nature, are especially susceptible to the adverse [e]ffects of an employee's unacceptable conduct." *Sheaffer v. Unemployment Comp. Bd. of Review*, 499 A.2d 1121, 1123 n.7 (Pa. Cmwlth. 1985). Further, "if an examination of all relevant circumstances" show that the "claimant's conduct is incompatible with [the claimant's] job responsibilities," then the second prong of the test is met. *Elser v. Unemployment Comp. Bd. of Review*, 967 A.2d 1064, 1070 (Pa. Cmwlth. 2009).

Claimant argues Employer did not meet its burden because her conduct did not occur at work and did not involve Employer's students; thus she had no duty to report the alleged child abuse. However, as explained above, the basis of ineligibility under Section 3 is a claimant's discharge for **non-work-related conduct**. It is precisely because Claimant's conduct did not occur at school or with one of Employer's students that the Board found Claimant ineligible under Section 3, not Section 402(e).

13

Claimant next asserts Employer suspended her because of her arrest for failure to report the suspected child abuse, a charge that was withdrawn. She appears to contend, therefore, that the other charges, including the charge to which she pled guilty, could not be used to find her ineligible for UC benefits. Her contentions are unsupported by the record.

Employer's Notice of Application Request for Separation and Wage Information submitted to the UC Service Center on May 26, 2017, states that Claimant was "currently suspended without pay due to her arrest," not that her suspension was premised only upon the charge of failure to report suspected child abuse. (C.R. Item No. 5.) Solicitor reiterated this at the first Referee hearing, testifying that Claimant was suspended because "[s]he had been arrested for covering up child slashing." (July 2017 Hr'g Tr. at 5.) Furthermore, in the Arrest/Conviction Report and Certification Form that Claimant provided to Employer, which was admitted as an exhibit in the first Referee hearing, Claimant specified that she was arrested for "[l]ying to an officer, concealing evidence[,] and failure to report to Children and Youth." (July 2017 Hr'g Tr. at 16; Employer's Ex. 7.) Although one of the charges for which Claimant was arrested was a failure to report suspected child abuse, Employer never expressed that Claimant's suspension was premised on that charge alone. Rather, Employer suspended Claimant for her arrest arising from her conduct associated with the alleged child abuse, which included all three charges. Moreover, in finding Claimant ineligible under Section 3, the Board did not rely upon Claimant's arrest for that charge, but on the charge and conduct for which she was convicted, her tampering with or falsifying evidence.

14

Finally, Claimant contends that Employer did not meet its burden under the *Derk* test. She contends that her conviction for tampering with or falsifying evidence does not affect her honesty or her ability to perform her job.

Claimant does not appear to dispute the first prong of the test, but, even if she did, she would not prevail. Her conviction for tampering with evidence satisfies the first prong to establish that her conduct was contrary to acceptable standards of behavior. *Hawkins*, 695 A.2d at 966. Turning to the second prong, we discern no error in the Board's determination that Employer met its burden by proving that Claimant's conduct directly affects her ability to perform her work duties.

Applying the *Robinson* factors, we note first that HR Director testified that Claimant's duties involved being responsible for the various needs of the students Employer entrusted to her to supervise, and, as such, involved a position of a special degree of trust. (Remand Hr'g Tr. at 9-10.) Second, the nature of Claimant's conduct and the crime to which she pled guilty compromises that position of trust and directly affects her ability to carry out her duties. Claimant argues that because she only pled guilty to tampering with evidence, her conviction does not affect her ability to perform her job. We reject Claimant's attempts at minimizing the seriousness of her conduct and conviction. By pleading guilty to tampering with evidence, Claimant's conviction "is conclusive proof of the wrongdoing for which [s]he was charged." *Hawkins*, 695 A.2d at 966. She cannot challenge that conviction or attempt to explain the conduct to which she admitted away. *Id.* Claimant admitted that "**believing that an** official proceeding or **investigation [wa]s pending** or about to be instituted" for the alleged child slashing by her son, she "**conceal[ed]** or remov[ed]" **evidence** "**with intent to impair its** verity or **availability in such proceeding or investigation**." 18 Pa. C.S. § 4910 (emphasis

added). We agree with the Board that Claimant's intentional conduct to conceal evidence so that it would not be available to the police most certainly "shows untrustworthiness and dishonesty." (Board Op. at 3.) Further, given that the underlying crime related to the alleged abuse of a child, under "the totality of the circumstances," Claimant's conduct "negatively impacted the [C]laimant's ability to perform her job." (*Id.*)

Our determination here is consistent with *Derry v. Unemployment Compensation Board of Review*, 693 A.2d 622 (Pa. Cmwlth. 1997), and *Elser*, both of which involved the application of Section 3 to claimants who worked with youth. In *Derry*, the claimant, who was employed as a child care worker for a YMCA Youth Center, was discharged upon allegations of illegal activity ultimately resulting in an arrest for drug-related charges. Although the Board's decision affirming denial of benefits was premised on Section 402(e), we addressed the claimant's arguments related to eligibility under Section 3, as well. *Derry*, 693 A.2d at 625. Noting that the claimant's conduct and later admission to a drug-related charge "reflected upon his character and ability to perform as a role model for the children at the shelter," we rejected the claimant's argument that his unemployment was through no fault of his own. *Id.* at 626.

In *Elser*, the claimant was employed as a principal at a residential treatment facility for at-risk boys who had been "adjudicated delinquent by the court system." 967 A.2d at 1066. During a dinner party attended by the claimant, a fellow administrator at the facility, and their significant others (who were not associated with the facility), the claimant "inquired if [his coworker] had any 'weed' and made graphic and slanderous comments about two former employees." *Id.* at 1067. The employer terminated the claimant following this incident. The claimant was found

16

to be ineligible for benefits, and the Board affirmed this ineligibility under Section 402(e) and Section 3. *Id.* at 1069. We affirmed, holding that, with regard to Section 3, "the nature of the offense and [c]laimant's position as principal of a facility for adjudicated youths [was] troubling," and that the claimant had publically conducted himself in a manner adverse to the employer's interests. *Id.* at 1071.

As we did in *Elser* and *Derry*, we must consider not only Claimant's conduct, but also the individuals with whom Claimant interacted in her employment. As a paraprofessional, Claimant was responsible for supervising and caring for young children. We cannot conclude the Board erred in determining that her conduct in tampering with evidence in an attempt to make it unavailable to the authorities in the underlying alleged child abuse proceedings "reflect[s] upon [her] character and ability to perform as a role model," *Derry*, 693 A.2d at 626, and is "incompatible with [her] job responsibilities," *Elser*, 967 A.2d at 1070. Therefore, we discern no error in the Board's conclusion that Employer met its burden to prove Claimant is ineligible under Section 3.

## III. Conclusion

Because the Board's factual findings are supported by substantial evidence, and we discern no error in the Board's determination that Claimant is ineligible for benefits under Section 3, we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vita M. Forgione,                                   :
                    Petitioner            :
                                     :
                v.                               :  No. 995 C.D. 2018
                                     :
Unemployment Compensation                           :
Board of Review,                                    :
                    Respondent            :

## O R D E R

     **NOW**, March 14, 2019, the Order of the Unemployment Compensation Board of Review, dated June 28, 2018, is **AFFIRMED**.


                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge